**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Terry Lee SMITH, Defendant-Appellant.**

**No. 83–5844.**

United States Court of Appeals, Sixth Circuit.

Argued July 31, 1984.

Decided Oct. 30, 1984.

Rehearing and Rehearing En Banc Denied Jan. 21, 1985.[*]

Siler, Chief Judge, sitting by designation, dissented and filed opinion.

---

6. In view of this holding, we do not address the plaintiff's irrebuttable presumption argument.

* Judge Siler would grant the petition for rehearing en banc as set forth in his dissent to the panel's opinion.

Herbert S. Moncier (argued), Ann C. Short, Knoxville, Tenn., for defendant-appellant.

John W. Gill, U.S. Atty., Marilyn Hudson (argued), Asst. U.S. Atty., Knoxville, Tenn., for plaintiff-appellee.

Before KEITH and MARTIN, Circuit Judges, and SILER, District Judge.*

BOYCE F. MARTIN, Jr., Circuit Judge.

Terry Lee Smith appeals his jury conviction for conspiracy to rob and aiding and abetting the robbery of a United States postal employee in violation of 18 U.S.C. §§ 2, 371 and 2114. Smith's main arguments are that the trial judge erred in failing to hold a Jencks Act hearing and in admitting into evidence the taped confession of his brother, Robert Lynn Smith.

Terry Smith is a former employee of the United States Postal Service in Knoxville, Tennessee. In July 1980, he conspired with his brother, Robert, to rob the post office where he worked. Robert was assigned the task of committing the actual robbery. On the afternoon of August 4, 1980, Robert appeared at the back door of the post office, clad in ski mask and gloves, armed with a .357 magnum revolver, and demanded money from Terry and another clerk, Elmer Tipton. Tipton did not know that the robbery had been staged. Terry handed over to his brother the entire proceeds from the days activities—some $3,500 in cash and $1,400 in checks and money orders. Robert took the money and escaped undetected. Later that night, the brothers met to split the cash proceeds. Robert then burned the checks and money orders.

Initially, federal agents made no arrest in the case. Terry was a suspect, but there was insufficient evidence against him to justify an indictment. The break in the case came some two and one-half years later, when Rebecca Ann West, Robert's ex-wife, contacted the postal inspectors and told them that the Smith brothers had joint-ly planned and carried out the crime. West's motivation for coming forward was her desire to obtain custody of their daughter. Subsequently, West had a meeting with Robert, allegedly about the custody dispute, which she secretly taped. In their conversation, Smith admitted his complicity in the robbery.

Based on West's evidence, the Smith brothers were indicted and tried. During their trial, Robert's taped confession, redacted to omit most references to Terry, was admitted into evidence. Shortly thereafter, Robert pled guilty and testified against his brother. Terry was convicted on both counts of the indictment and sentenced to nine years imprisonment.

Terry Smith's first argument on appeal is that the trial judge violated the Jencks Act, 18 U.S.C. § 3500, when he failed to hold a hearing outside the presence of the jury on Smith's request for the postal inspectors' notes of their interviews with Rebecca Ann West. Our cases have held that such a hearing is required whenever there is a disputed request for Jencks Act material in order to determine whether the documents in question are actually statements of a witness. *United States v. Chitwood,* 457 F.2d 676, 678 (6th Cir.), *cert. denied,* 409 U.S. 858, 93 S.Ct. 141, 34 L.Ed.2d 103 (1972). The trial transcript reveals that no such hearing was held. Rather, when the request was made, the prosecutor objected to turning over the notes on the grounds that they were not West's statements. The trial judge then asked, in the presence of the jury, "Well, is there anything in the file that she approved?" When the prosecutor replied in the negative, the judge denied the defendant's request. That was the extent of the hearing on the Jencks Act question. This is clearly not sufficient to meet the requirement laid down in *Chitwood.*

If we had before us the notes in question, we would be willing to do what the *Chitwood* court did and analyze the disput-

---

* Honorable Eugene E. Siler, Jr., United States District Judge for the Eastern and Western Dis-

tricts of Kentucky, sitting by designation.

ed material to determine whether its omission from the trial could have prejudiced the defendant. Unfortunately, while the record indicates those inspector notes were to have been placed under seal for review by this court, no such documents were ever received by us. While counsel for the government offered assurances at oral argument that the notes contained nothing of any use to the defendant, we hesitate to rely on such extra-record statements. Moreover, were this the only defect in the case, we might be willing to await transmittal of the disputed evidence from the lower court before rendering our decision. However, as there is another problem with the case, we decline to follow that route as well.

■ Terry also contends that it was improper for the trial judge to have allowed into evidence Robert's taped confession once Robert pled guilty and was severed from the case. We agree. Robert's confession was admitted at trial under the admission-by-a-party exception to the hearsay rule. Fed.R.Evid. 801(d)(2)(A). However, once Robert was severed from the case, he was no longer a party and the statement was no longer admissible under 801(d)(2)(A).

■ The prosecutor has been unable to provide, nor have we been able to find, any other evidentiary provision that would allow the statement's admission. Because the statement is hearsay, it cannot be admissible unless it falls into one of the hearsay exceptions. It does not fall under the co-conspirator exception. Fed.R.Evid. 801(d)(2)(E). Robert Lynn clearly was a co-conspirator with his brother. However, in order to be admissible the statement must also be made in the furtherance of the conspiracy. This statement, occurring as it did almost three years after the conspiracy was over, and made to Robert's ex-wife in the course of a discussion about the custody of their child, does not fit within that category.

■ The statement also does not come within the prior-consistent-statement excep-

tion to the hearsay rule. Fed.R.Evid. 801(d)(1)(B). Under this doctrine, a witness's prior consistent statement can be used "to rebut an express or implied charge against him of recent fabrication or improper influence or motive." Accordingly, several courts have said that it is proper, when defense counsel argues that a witness has fabricated his testimony in exchange for a favorable plea agreement from the government, to admit a prior consistent statement of the witness made before the agreement was negotiated. *See, e.g., United States v. Feldman,* 711 F.2d 758, 766 (7th Cir.1983). However, in order for this exception to apply, it is essential that the consistent statement be admitted to *rebut* a charge of improper motive. In our case, the statement was introduced *before* the witness making it had even taken the stand. Under these circumstances, the prior-consistent-statement exception simply cannot apply. *See United States v. Strand,* 574 F.2d 993, 996–97 n. 4 (9th Cir.1978); *United States v. Weil,* 561 F.2d 1109, 1111 (4th Cir.1977).

■ Even if the statement was not admissible, the government argues that there was no prejudice, because the tape inculpated only Robert and because he testified at trial to everything he said on the tape. We disagree. Terry was prejudiced precisely *because* the tape corroborated Robert's trial testimony. Robert admitted on the stand that he only agreed to plead guilty and testify against his brother because the plea bargain the government offered was just too good to turn down. Under these circumstances, the jury might be inclined to be skeptical of his testimony because of concerns that he was saying what he thought the prosecutor wanted him to say and not necessarily what was true. However, because the tape corroborated Robert's story, it made his testimony virtually unimpeachable.

Accordingly, the decision of the district court is reversed and the case remanded for a new trial.

SILER, District Judge, dissenting.

I respectfully dissent from the majority opinion, as I would affirm the trial court.

With regard to the issue concerning the Jencks Act, 18 U.S.C. § 3500, the notes of the postal inspector in his interview with Rebecca Ann West are not "statements" producible under the provisions of the Act, which defines "statement" as:

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
>
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or
>
> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e).

Obviously, the notes did not fall within subsections (2) or (3), so if they are "statements," they must come within subsection (1). *See Goldberg v. United States,* 425 U.S. 94, 96 S.Ct. 1338, 47 L.Ed.2d 603 (1976).

Clearly, it would have been the better practice for the district court to have held a hearing outside the presence of the jury to see if the notes by the postal inspector were "statements" under the Jencks Act. *See United States v. Chitwood,* 457 F.2d 676 (6th Cir.), *cert. denied,* 409 U.S. 858, 93 S.Ct. 141, 34 L.Ed.2d 103 (1972). Here, however, the defendant had an opportunity to make the record during cross examination of both the postal inspector and Rebecca Ann West, and neither even hinted that the notes taken by the postal inspector were read back to West. These notes were just used to prepare questions the postal inspector suggested to West when she later spoke to Robert Smith. Those questions were produced by the United States as Jencks Act materials, although there was even an issue whether they qualified as statements, as West said she did not read the questions she was given.

Had the notes been transmitted to this Court, it perhaps could have considered the matter under the procedure adopted in *United States v. Chitwood, supra* at 678. As the notes were not transmitted to this Court, the only remedy that is available is not a new trial, but a remand for the non-adversary hearing. Nevertheless, I believe that is unnecessary under the facts developed under cross examination, as the notes were never signed or otherwise adopted or approved by West, as was done in *Goldberg v. United States, supra;* and *Campbell v. United States,* 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1983).

On the second issue raised about the taped statement made by Robert Smith, I also believe that there was no error. When the taped confession by Robert Smith was introduced into evidence, Robert was still a defendant. Therefore, it was admissible under Rule 801(d)(2)(A), Federal Rules of Evidence, which is conceded by the appellant.

After Robert Smith pleaded guilty and had been severed from the case, he took the stand and admitted his participation in the crime. At that point (although not argued in the government's brief), the prior consistent statement on the tape was admissible under Rule 801(d)(1)(B), Federal Rules of Evidence, to rebut an implied charge against Robert of recent fabrication or improper influence or motive. *See Baker v. Elcona Homes Corp.,* 588 F.2d 551, 559 (6th Cir.1978), *cert. denied,* 441 U.S. 933, 99 S.Ct. 2054, 60 L.Ed.2d 661 (1979).

The majority opinion asserts that the statement does not come within this prior consistent statement exception as it was admitted *before* Robert Smith testified. At that time it was admissible against Robert only. However, when Robert subsequently took the stand, it became admissible against Terry Smith once defense counsel on cross examination implied that there was recent fabrication or improper influence or motive, through a plea bargain or "difficulties" within the family.

 

Even if that prior consistent statement was not admissible under that exception, the redacted statement on tape was not prejudicial to the defendant. The only reference to Terry Lee Smith on tape mentions that he had a job and later that he "handed [the money] to Robert." [1] However, Terry's defense was that it was a robbery, so he admitted being at the scene, as he was an employee, and being forced to give up the money. The other references which the defendant has made to the tape in which he claims prejudice make no mention of Terry Smith. If there was any prejudice to the defendant, it was harmless beyond a reasonable doubt. *See Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

---

1. From pages 14–15 of the transcript:

WEST: Well, how's Terry and Jamie Doing? They doing all right?

SMITH: They're doing real well. Terry's working and Jamie's working.

WEST: Terry get a job finally?

SMITH: Yea, he is working for, what it the name of it, some lumber company.

WEST: I thought he was an electrician.

SMITH: Well, he's just sorta doing that cause you know he's picked up.

WEST: He's not in the union is he?

SMITH: No, no, no, he's not an union electrician, no. He was working as an electrician in California but there is nothing around here for electricians now union or nonunion. So he is driving a lumber truck.

From page 22 of the transcript:

WEST: How did Terry do it, just throw it at you,

SMITH: Just handed it to me.

WEST: Did he act like, you know, did he act nervous, and all that, you

SMITH: Nah