**Richard NITZ, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–781.**

Court of Appeals of Alaska.

June 6, 1986.

---

Linda K. Wilson, Susan Orlansky, Asst. Public Defenders, and Dana Fabe, Public Defender, Anchorage, for appellant.

John A. Scukanec, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

▅▅▅ In this case, we must determine the extent to which evidence of prior consistent statements may be admitted to bolster the testimony of the victim in a case involving the sexual abuse of a child. We hold that evidence of consistent statements made by the victim on prior occasions may be admitted, provided that it is actually relevant to rebut an express or implied charge of recent fabrication or improper motive or influence, and provided that its probative value outweighs its potential for prejudicial impact. Before such evidence is admitted, however, the victim must testify and be subjected to a charge of recent fabrication or improper motive or influence. Furthermore, when it appears that the alleged motive to testify falsely arose before the prior statement was made, the statement may be admitted only for the purpose of rehabilitating the victim's credibility and may not be considered as substantive evidence of guilt. In the present case, we conclude that a reversal of Nitz' conviction is required, because extensive evidence of prior consistent statements was admitted at trial without any determination of its actual probative value and before any charge of recent fabrication or improper motive or influence was made against the victim.

## I. FACTUAL BACKGROUND

Richard Nitz was convicted by a jury of four counts of lewd and lascivious acts towards children, in violation of former AS 11.15.134, three counts of sexual assault in the first degree, in violation of former AS 11.41.410(a)(4), and two counts of sexual abuse of a minor, in violation of former AS 11.41.440(a)(2). The convictions resulted from charges that, over a period of approximately four years, Nitz committed a series of sexual assaults against his stepdaughter, T.K. Specifically, Nitz was accused of repeatedly fondling T.K.'s breasts and vagina, of penetrating the child sexually with his fingers and penis, and of engaging in acts of fellatio and cunnilingus with her. T.K. was seven years old when the assaults began and almost eleven years old when they ended.

These incidents first came to light in February of 1982, when T.K.'s conduct alerted a neighbor, Paula Hall, to the possibility that T.K. had been sexually abused. Hall had known T.K. since the child's birth and was a close friend of T.K.'s mother, Dorothy Nitz, who was married to Richard Nitz. When Hall became suspicious, she invited Dorothy Nitz to bring T.K. to her house. There, Hall related her suspicions to Dorothy Nitz. Dorothy Nitz vehemently denied any possibility that T.K. might have been sexually abused. When Hall urged her to question T.K., however, Dorothy Nitz turned to the child, who was playing nearby, and asked, "Has daddy been bothering you?" According to Hall, T.K. immediately became hysterical and answered, "Yes, all the time, mama, every time you leave me with him." Dorothy Nitz became angry and left Hall's house, taking T.K. with her. Hall reported the incident to her husband, who contacted the police.

Over the next several months, T.K. discussed Nitz' assaults with several people. She was removed from Nitz' home the day after making her initial accusation, February 3, 1982. That day, she was interviewed briefly by Anchorage Police Officer Clifton Bennett. Later that day, she spoke with David Teel, an employee of the Alaska Division of Family and Youth Services (DFYS). T.K. divulged limited details of Nitz' assaults to both Bennett and Teel. On February 4, 1982, two days after her initial complaint, T.K. was examined by a

physician, Dr. Thad Woodard, to whom she also gave a sketchy report of Nitz' sexual molestation. Dr. Woodard's physical examination disclosed no evidence to directly confirm or rule out T.K.'s report. On July 19, 1982, more than four months after the initial report of molestation, Anchorage Police Officer Steven Warner conducted a further interview of T.K. at the request of the district attorney's office, and obtained a more complete description of Nitz' assaults.

After T.K.'s removal from Nitz' home, the state made arrangements to provide her with psychological counseling, in order to address any emotional problems resulting from the sexual abuse she had experienced. T.K.'s counselor, Phillip Kaufman, initially encountered problems working with T.K., because T.K. found it extremely difficult to discuss Nitz' sexual assaults. After working with T.K. for several months, Kaufman contacted Paula Hall and enlisted her assistance. At Kaufman's request, Hall had a lengthy talk with T.K. and eventually convinced the child to speak more openly about Nitz' assaults. Thereafter, T.K. was apparently able to describe her experiences to Kaufman more freely and in greater detail.

Nitz was first indicted on October 12, 1982. After several procedural setbacks, his case was ultimately scheduled for trial in October 1984.[1] Prior to trial, Nitz moved for a protective order, on grounds of hearsay, seeking to preclude the state from presenting evidence of any prior, out-of-court statements made by T.K. concerning the alleged assaults. The state opposed Nitz' motion for a protective order, advancing two separate arguments to justify admission of T.K.'s prior statements. The state contended, first, that T.K.'s initial report, made to her mother on February 2, 1982, in Paula Hall's presence, was admissible under the traditional hearsay exception allowing evidence of a victim's first complaint of sexual assault to be presented at trial. *See Greenway v. State*, 626 P.2d 1060 (Alaska 1980).

The state's second argument was that T.K.'s other prior statements were admissible as prior consistent statements. The state informed the trial court that it expected the defense to attack T.K.'s credibility by implying that she fabricated her accusation of sexual abuse because she resented Nitz for being a strict disciplinarian and for interfering with the relationship she enjoyed with her mother before Nitz came into the family. According to the state, the prior statements evidence would tend to disprove the charge of fabrication, because it would show that T.K.'s prior statements were made reluctantly and that the child became progressively more willing to divulge details of the assault over a considerable period of time.

After hearing argument, Superior Court Judge Ralph E. Moody rejected Nitz' efforts to limit admission of T.K.'s prior statements. Judge Moody ruled that T.K.'s initial report of sexual assault was admissible under the first complaint doctrine of *Greenway v. State*. Judge Moody also apparently believed that the *Greenway* first complaint rationale extended to the statements T.K. made to Officers Bennett and Warner. The judge commented that victims' reports to police officers were always admissible. Finally, Judge Moody broadly concluded that the balance of T.K.'s prior statements was admissible either as prior consistent statements or as prior inconsistent statements. The judge ruled that the state would be free to rely on T.K.'s prior consistent statements, while

1. The chronology of events leading to Nitz' trial is unimportant to this appeal. To a large extent, we described this chronology in *State v. Nitz*, 684 P.2d 134, 136 (Alaska App.1984). There, we reversed an order entered by the superior court dismissing Nitz' third indictment for violation of the speedy trial provisions of Criminal Rule 45. We note that, in his current appeal, Nitz renews his speedy trial argument, urging us to reconsider our decision in *State v. Nitz*. We are not convinced, however, that the arguments advanced by Nitz warrant reconsideration of our prior ruling. To the extent that the discussion of the speedy trial issue in Nitz' opening brief can be construed to raise arguments that have not been previously addressed by this court, we find those arguments to be without merit and reject them.

Nitz, for his part, could bring out any prior statements inconsistent with T.K.'s trial testimony.

Judge Moody additionally stated, however, that T.K.'s prior statements would not be admissible for the truth of the matter asserted, but merely as background, "to show that it occurred." At the outset of the trial, the judge told the jury:

> I want to give you a cautionary instruction here in regard to the opening statement in this case that—and I would ask the district attorney to indicate that some of this evidence she says is coming in is in for a limited purpose and not for the truth of it, but to show the circumstances in which this matter came to the law enforcement's attention, so as to whether it happened or not, you'll have to determine it and—from the witness given here and also have to determine from the alleged victim in this case whether in fact it did occur regardless of what happened before it was called to the law enforcement's attention.

Although the state proceeded, in its opening statement, to make numerous references to the prior consistent statements it intended to produce, it made no reference to any limitation of the purposes for which this evidence could be considered.

Nitz reserved his opening statement until after the prosecution presented its case-in-chief. T.K. was the last witness to testify for the state. Before presenting T.K.'s testimony, the state called seven witnesses, all of whom were permitted, over Nitz' standing hearsay objection, to describe statements T.K. had previously made concerning Nitz' alleged sexual assaults.[2] On appeal, Nitz maintains that the prosecu-

tion's extensive reliance on these witnesses to present evidence of T.K.'s prior out-of-court statements amounted to reversible error.

## II. DISCUSSION

A. *The significance of prior consistent statements evidence in child sexual assault cases*

Questions concerning the admissibility of prior consistent statements are hardly unique to cases involving the sexual assault of children. Yet, there are perhaps no other cases in which these questions arise so regularly and are imbued with such urgent significance. In cases of sexual assault against children, there are seldom any witnesses to the crime. Often, there is little or no physical evidence capable of lending support to the victim's story. Particularly where a parent or a step-parent is charged, the question of guilt invariably hinges on the credibility of the victim. The victim is typically an unsophisticated child, inarticulate, and emotionally torn by the experience. Impressionable, readily confused, and incapable of furnishing any detailed verbal account of the offense, the typical victim is hardly an ideal witness.

Thus, in such cases, when the accused attacks the victim's testimony by an express or implied claim of faulty memory or fabrication, the victim's testimony is particularly vulnerable. Jurors are left with virtually no frame of reference for evaluating the credibility of the victim's story, which is bound to seem, at one and the same time, too serious to be accepted uncritically and too shocking to be rejected lightly. Reliance on personal experience and common

---

**2.** The witnesses who provided testimony concerning T.K.'s prior statements were, in order of appearance: Paula Hall, who testified about T.K.'s initial complaint and about the subsequent conversation she had with T.K. at the request of T.K.'s counselor, Phillip Kaufman; Officer Clifton Bennett, who testified about his interview with T.K. on February 3, 1982, the day after the initial report of molestation; Officer Steven Warner, who testified about the interview he conducted of T.K. on July 19, 1982, at the request of the district attorney's office; Dor-

othy Nitz, T.K.'s mother, who testified about the initial statement made by T.K. on February 2, 1982, in Paula Hall's presence; Phillip Kaufman, T.K.'s counselor, who described statements T.K. made to him over the course of an extended period of treatment; Dr. Thad Woodard, the physician who examined T.K. two days after her initial complaint, to whom T.K. stated that she had been sexually assaulted by her stepfather on numerous occasions; and David Teel, a DFYS social worker, who testified about his February 3, 1982, interview with T.K.

sense will be of little value to most jurors: because the victim is a child and sexual abuse of children is a subject alien to the experience of most jurors, a realistic context for evaluating truthfulness will be difficult to find. Understandably, then, conscientious jurors may often find themselves in desperate need of reliable information to shed light on the veracity of the victim's testimony.

It is this peculiar context, we believe, that imparts a unique sense of urgency to questions concerning the admissibility of prior consistent statements in cases of sexual assault upon children, for evidence of prior statements by the victim and the circumstances in which those statements were made can be of significant benefit to the jury. When actually relevant to refute a claim of fabrication or false memory, such evidence can, in our view, furnish the jury with a reliable and understandable backdrop against which to judge credibility.

Admissibility of prior consistent statements is nevertheless governed by legal rules. Countervailing the strong policy of providing all relevant information to the jury is an equally strong policy of protecting the accused from unfair prejudice. Where a case hinges on the credibility of a single witness who is an inarticulate child, it can be fundamentally unfair to allow the bulk of the child's testimony to be presented through a parade of articulate, experienced, adult witnesses who impart to the child's statements the mature eloquence of adulthood and a sense of their own credibility, while adding nothing of substance but the force of repetition. It is to protect against such abuses that the indiscriminate use of prior consistent statements has never been approved.

### B. *The trial court's ruling*

 In this case, Judge Moody evidently concluded that, merely because T.K. would testify and be available for cross-examination, the parties could freely be permitted to present evidence of the child's prior, out-of-court statements, regardless of whether the prior statements were consistent or inconsistent with her testimony and regardless of whether their existence was established on cross-examination, in rebuttal, or as part of the state's case-in-chief, before any impeachment had occurred. In this regard, the trial court's ruling was plainly incorrect. There is no generalized exception to the hearsay rule allowing the use of prior, out-of-court statements merely because a witness testifies at trial and can be cross-examined. Where such statements are received as substantive evidence and do not fall within a prescribed hearsay exception, it is error to admit them, regardless of whether the statements are repeated on the stand. *See United States v. Pedroza*, 750 F.2d 187, 199–200 (2d Cir.1984); *United States v. Ziegler*, 583 F.2d 77, 81–82 (2d Cir.1978); *United States v. Check*, 582 F.2d 668, 680–81 & n. 40 (2d Cir.1978). *See generally* 4 J. Wigmore, *Evidence* §§ 1122–1133 (Chadbourn rev. ed. 1972) (hereinafter Wigmore); *McCormick on Evidence* § 49 (2d ed. 1972).

The reasons for excluding prior consistent statements of a witness offered in the state's case-in-chief, prior to any impeachment, are specifically addressed by Wigmore:

> When the witness has merely testified on direct examination, without any impeachment, proof of consistent statements is unnecessary and valueless. The witness is not helped by it; for, even if it is an improbable or untrustworthy story, it is not made more probable or more trustworthy by any number of repetitions of it. Such evidence would ordinarily be cumbersome to the trial and is ordinarily rejected.

Wigmore § 1124 at 255 (footnotes omitted).

Accordingly, in Nitz' case, to determine the admissibility of T.K.'s prior, out-of-court statements, we must focus on whether and to what extent those statements fell within a recognized exception or exclusion to the hearsay rule. To the extent that T.K.'s statements amounted to inadmissible hearsay, we must also inquire whether the error in their admission was harmless. On

appeal, as it did below, the state has suggested two separate grounds for admission of T.K.'s prior statements.

### C. *The first complaint doctrine—Greenway v. State*

The state's threshold reliance is on *Greenway v. State*, 626 P.2d 1060 (Alaska 1980). There, the Alaska Supreme Court recognized and applied the traditional first complaint doctrine. The doctrine is grounded on the view that, in sexual assault cases, evidence of the victim's initial report is necessary to overcome the inference of silence that might otherwise inaccurately be drawn by the jury. *See generally* 4 Wigmore § 1135. In opposition to the state, however, Nitz argues that the first complaint doctrine does not exist under the Alaska Rules of Evidence. Nitz points out that in *Greenway,* the supreme court noted that the Alaska Rules of Evidence—then newly adopted and inapplicable to the case before it—failed to provide for an exception to the hearsay rule covering a victim's first complaint of sexual assault. The court in *Greenway* referred the matter to its standing committee on rules of evidence. *See Greenway v. State*, 626 P.2d at 1061 n. 3. Because there is no indication that an amendment of the Alaska Rules of Evidence was subsequently recommended by the committee, because none has been adopted by the court, and because the *Greenway* case itself arose before the Alaska Rules of Evidence were adopted, Nitz argues that the hearsay exception currently does not exist.

■ We disagree with Nitz' interpretation of *Greenway.* As we read that case, the supreme court made it clear that the omission of the first complaint doctrine from the Alaska Rules of Evidence was merely an oversight. The court held that the traditional doctrine allowing use of such evidence would continue to apply. The court's recent decision in *Contreras v. State*, 718 P.2d 129 (Alaska 1986), supports this reading of *Greenway.* In *Contreras,* the court specifically cited *Greenway* as a case holding a "pre-existing" rule to survive "adoption of the rules of evidence." *Id.* at 136. Under *Greenway,* evidence of the victim's first complaint in a sexual assault case is excepted from the hearsay rule.

Our holding raises several secondary questions. Because the *Greenway* rationale applies, by definition, only to the first complaint of sexual assault, it can be invoked in Nitz' case only to justify the admission of T.K.'s first complaint. That complaint occurred on February 2, 1982, when T.K.'s mother asked whether Nitz had been bothering T.K. According to Paula Hall, the child's response was, "Yes, all the time, mama, every time you leave me with him."

Nitz correctly argues that admission of this statement is problematical on several grounds, even if the first complaint doctrine is recognized. Because the doctrine is founded on the assumption that evidence of the victim's first complaint is necessary to counteract the inference of silence that might otherwise be drawn, such evidence has traditionally been limited to proof of the fact that a complaint was made. Details of the victim's first report, including the identity of the assailant, have not generally been considered admissible. Moreover, admissibility has usually been conditioned on the existence of a recent complaint, and it has been required that the complaint be initiated by the victim. Reports occurring a significant time after the alleged assault and reports elicited through questioning have usually been deemed outside the purview of the doctrine. *See generally* 4 Wigmore §§ 1135–36. In the present case, Nitz points out that T.K.'s first complaint was not made immediately after an assault, that it was elicited through questioning, and that Paula Hall was allowed to relate its details.

■ In our view, however, these circumstances did not render Paula Hall's testimony concerning the first complaint inadmissible. We perceive little need for artificial limits on a witness' account of the circumstances under which the victim's initial report of sexual assault is made. The jury

should generally be permitted to consider these circumstances in assessing the weight to be given to the prior statement.

■ In *Greenway*, the supreme court expressly recognized that the victim's first report need not be made immediately after the assault if the period of delay is adequately explained. Here, the sexual abuse reported by T.K. was of an ongoing nature. T.K. claimed that she had not previously reported the assault because Nitz told her she would never see her younger sister again if she did. T.K. also said that she had previously made efforts to report the situation to her mother, but her efforts were ignored. Given the totality of the circumstances, we conclude that the reasons for the delay in T.K.'s first complaint are adequately explained. *See* 4 Wigmore § 1135, at 301–03.

■ We similarly conclude that Paula Hall's testimony was not rendered inadmissible merely because it contained details of T.K.'s first complaint. In recent years, there has been a marked trend toward relaxation of the traditional restrictions governing admission of evidence of the victim's first complaint. *See generally* Graham, *The Cry of Rape: The Prompt Complaint Doctrine and the Federal Rules of Evidence*, 19 Willamette L.Rev. 489, 502–06 (1983). More recent decisions have recognized the appropriateness, within the reasonable limits of the trial court's discretion, of allowing details of a first complaint of sexual assault to be admitted for the purpose of enabling the jury to obtain a fair understanding of the circumstances under which the complaint was made. *See, e.g., People v. Panky*, 82 Cal.App.3d 772, 147 Cal.Rptr. 341, 345–46 (1978); *People v. Alfaro*, 61 Cal.App.3d 414, 132 Cal.Rptr. 356, 364–65 (1976); *State v. Noble*, 342 So.2d 170, 172–73 (La.1977). Even jurisdictions that continue to forbid revealing the identity of the assailant recognize that admission of such evidence amounts to harmless error where identity is not contested. *See, e.g., People v. Young*, 89 Ill.App.3d 333, 45 Ill. Dec. 34, 412 N.E.2d 167, 170 (1980); *State*

*v. Fleming*, 27 Wash.App. 952, 621 P.2d 779, 782–83 (1980).

In the present case, while Paula Hall was permitted to give a complete description of T.K.'s first complaint against Nitz, the complaint itself was not particularly detailed. Moreover, there is good reason to question the utility of attempting to conceal the identity of the person accused in the victim's first complaint where the victim is a child who accuses a parent or step-parent of sexual assault. Identity will seldom be an issue in such cases, and even the least astute of jurors will readily be capable of surmising that the victim's complaint was directed at the parent who has been charged with the offense. This case presents an excellent illustration. Nitz' identity was never in issue; the disputed issue was whether any assault had ever occurred. The fact that T.K.'s complaint was directed at Nitz thus had no particular significance and could hardly have amounted to a major revelation.

■ Finally, the fact that T.K.'s report was made in response to a question posed by her mother is not determinative of admissibility in the present case. The record indicates that T.K.'s report was triggered by a single question, which was posed in a neutral manner. As described by Paula Hall, T.K.'s response was immediate and extremely emotional. These circumstances afford adequate assurance that T.K.'s complaint was spontaneous. The significance, if any, to be given to the fact that T.K.'s complaint was made in response to her mother's question was properly left for the jury to decide. Considering the totality of the circumstances, we conclude that no error was committed in admitting Paula Hall's testimony concerning T.K.'s first complaint of sexual abuse.

D. *The prior consistent statements rationale—Alaska Rule of Evidence 801(d)(1)(B)*

We now turn to the state's second theory of admissibility. The state relies on Alaska Rule of Evidence 801(d)(1)(B) to justify admission of the balance of the evidence con-

cerning T.K.'s various out-of-court statements. This rule defines prior consistent statements as non-hearsay under certain circumstances:

> (d) *Statements Which Are Not Hearsay.* A statement is not hearsay if
>
> (1) *Prior Statement by a Witness.* The declarant testifies at the trial or hearing and the statement is
>
> . . . . .
>
> (B) consistent with [the declarant's] testimony and is offered to rebut an express or implied charge against [the declarant] of recent fabrication or improper influence or motive. . . .

Rule 801(d)(1)(B) is commonly construed to require that three conditions be met before a prior consistent statement may be admitted as non-hearsay. First, the prior statement must be consistent with testimony given by the declarant at trial. Second, the statement must be admitted to rebut an express or implied charge of recent fabrication or improper influence or motive. Third, the prior statement must be shown to have been made before the asserted improper influence or motive arose. *See, e.g., United States v. Quinto*, 582 F.2d 224, 234 (2d Cir.1978), *aff'd sub nom. Rubin v. United States*, 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981); *State v. Thompson*, 379 N.W.2d 295, 296 (S.D.1985). *See also United States v. Parodi*, 703 F.2d 768, 784 (4th Cir.1983). These requirements comport with the traditional rule governing admission of prior consistent statements. *See generally*, 4 Wigmore, §§ 1124–1131.

In the present case, it is readily apparent that the extensive evidence of T.K.'s prior statements did not satisfy the third prerequisite for admission under Evidence Rule 801(d)(1)(B). Notably, all of T.K.'s prior consistent statements were made after her ostensible motive for testifying falsely had already arisen. Under the state's theory, the statements were admissible to rebut the charge that T.K. falsified her testimony because she disliked Nitz' discipline and resented his presence in the family home. The line of defense that the state's evidence was aimed at rebutting, however, plainly presupposes that T.K.'s motive to testify falsely was already in existence when she made her first complaint of sexual assault. Thus, the fact that T.K. made prior statements consistent with her trial testimony was, in and of itself, of little probative value to rebut the charge that she had a motive to testify falsely: precisely the same motive existed when her prior statements were made.

Cases from other states with rules of evidence similar to Alaska Rule of Evidence 801(d)(1)(B) provide compelling support for the conclusion that T.K.'s prior consistent statements should have been excluded because they were made after her purported motive to testify falsely had already come into existence. Recent decisions in at least six other states have found reversible error, under circumstances virtually indistinguishable from the present case, due to the admission of prior consistent statements made after a victim's purported motive to testify falsely had arisen. *See State v. Martin*, 135 Ariz. 552, 663 P.2d 236, 237–39 (1983) (affirming in part and modifying in part *State v. Martin*, 135 Ariz. 556, 663 P.2d 240 (App.1982)); *State v. Swain*, 493 A.2d 1056, 1058–59 (Me. 1985); *People v. Therrien*, 97 Mich.App. 633, 296 N.W.2d 8 (1980); *Smith v. State*, 686 P.2d 247 (Nev.1984); *State v. Thompson*, 379 N.W.2d 295, 296–98 (S.D.1985); *State v. Harper*, 35 Wash.App. 855, 670 P.2d 296, 298–300 (1983).

The decisions of the Arizona supreme court and court of appeals in *State v. Martin* are illustrative. Martin was charged with sexually assaulting his stepdaughter, who was eleven years old at the time of trial. The stepdaughter testified that Martin's sexual assaults occurred over a long period of time. She claimed that, because her mother refused to help, she eventually confided in her teacher about the assaults. On cross-examination, she admitted that she did not like Martin because his relationship with her mother changed her own relationship with her mother. Martin then testified that the victim did not like him and fabricated the charges to retaliate

against him. To rebut this implication, the state was allowed to present evidence of prior consistent statements through the testimony of a teacher, a police officer, a detective, a psychologist and a pediatrician.

Martin appealed to the Arizona Court of Appeals after being convicted. He contended that admission of the prior consistent statements was error under Arizona Rule of Evidence 801(d)(1)(B).[3] The court of appeals reversed Martin's conviction, holding that the prior statements were inadmissible under Rule 801(d)(1)(B), because they were made after the victim's motive to falsify had arisen. *State v. Martin*, 135 Ariz. 556, 663 P.2d 240, 243–44 (App.1982).

In reaching its conclusion, the court of appeals expressly determined that the error was not harmless:

> The likely prejudicial effect of the cumulative introduction of the victim's prior statements was summarized by counsel for Martin this way:
>
>> What this case boils down to is that [the victim] says that one thing happened and ... Martin says that something else happened. [The victim] goes out and repeats this to her teacher, police officer, a social worker, another police officer, a psychologist, and a doctor. These people all become witnesses. And it sounds, if you don't stop to think about it, that all these people were witnesses to what happened, when they really weren't. They're only witnesses to what they were told by [the victim]. Repetition by her of her story two times or three times or nine times doesn't make it any more true than the first time that it was told.
>
> We cannot say, beyond a reasonable doubt, that the litany of testimony all repetitious of the victim's original story did not influence the jury to convict Martin.

*Id.* at 243 (citations omitted).

On review, the Arizona Supreme Court agreed with the court of appeals' interpretation of Rule 801(d)(1)(B):

> The only way to be certain that a prior consistent statement in fact controverts a charge of "recent fabrication or improper influence or motive" is to require that the statement be made at a time when the possibility that the statement was made for the express purpose of corroborating or bolstering other testimony is minimized. In other words, to be admissible, the witness must make the prior consistent statement before the existence of facts that indicate a bias arises.

*State v. Martin*, 663 P.2d at 238.

The supreme court did disagree with the court of appeals' determination that the victim's prior statement was made after her motive to testify falsely had already arisen. Noting that the issue had not been addressed by the trial court, the supreme court found the appellate record to be inadequate for a conclusive determination as to when the victim's purported motive to falsify first arose. *Id.* at 238–39. The court nevertheless found that the trial court had committed error by admitting the prior consistent statements without first determining whether they were made before the victim's motive to testify falsely was in existence. *Id.* at 239.

The supreme court also agreed with the court of appeals' rejection of harmless error, concluding that it could not say that "the parade of corroborating witnesses had no influence on the jury's deliberations." *Id.* The court thus reversed Martin's conviction and directed that, on retrial, "if the challenged evidence is reintroduced, the trial court will have to determine if a motive to fabricate arose and if so when. Prior consistent statements made after such motive developed shall not be admitted." *Id.*

Two significant features distinguish Nitz' case from *Martin*. One, the record in the Nitz case unequivocally establishes that T.K.'s purported motive to falsify developed before she made her initial report of sexual assault. To the extent the motive might have led T.K. to fabricate, it

---

**3.** The Arizona rule is identical to the Alaska rule.

would have influenced all of her prior consistent statements, as well as her trial testimony. Two, evidence of T.K.'s prior consistent statements was admitted as part of the state's case-in-chief, before T.K. had testified and before her testimony had been attacked. Both of these distinguishing features would support a conclusion that the violation here was more egregious than the violation in *Martin*.

Although *Martin* and the other similar recent cases we have cited adopt a relatively narrow and inflexible reading of rule 801(d)(1)(B) and counsel reversal in the present case, we are not convinced that rigid application of the rule is either necessary or advisable. The requirement that a prior consistent statement be made before any motive to testify falsely has arisen is grounded in a common sense notion of relevance: the assumption that a prior statement will have little probative value to rebut a claim of fabrication due to improper motive unless it was made when the improper motive did not yet exist. There may nevertheless be circumstances where this generalized assumption does not hold true and where evidence of a prior consistent statement is actually relevant to rebut a claim of improper influence or motive, even though the statement was made when the influence or motive already existed. In such cases, we see little reason to apply a *per se* rule of exclusion, provided that the probative value of the prior statement as rebuttal evidence is determined to outweigh its potential for prejudicial impact.

Our reluctance to read Rule 801(d)(1)(B) as categorically excluding prior consistent statements made after a motive to testify falsely has arisen finds at least some support in the language of the rule itself. The express provisions of Rule 801(d)(1)(B) do not incorporate such a restriction.[4] Moreover, neither this court nor the Alaska Supreme Court has ever interpreted Rule 801(d)(1)(B) to include this requirement. *But see Greenway v. State*, 626 P.2d at 1061–62 (the discussion in the concurring opinion appears to assume that such a requirement exists).

Further support for our skepticism may be found in a line of recent federal cases, which acknowledge that Federal Rule of Evidence 801(d)(1)(B)—a provision identical to its Alaska counterpart—permits substantive use of prior consistent statements only when the statements were made before a motive to testify falsely arose, but reason that statements which do not meet this requirement may nonetheless be admitted, in the sound discretion of the trial court, for the limited purpose of rehabilitating the testimony of the impeached witness. *See, e.g., United States v. Harris*, 761 F.2d 394, 399–400 (7th Cir.1985); *United States v. Parodi*, 703 F.2d 768, 784–87 (4th Cir.1983). *See also United States v. Hamilton*, 689 F.2d 1262, 1273–74 (6th Cir. 1982), *cert. denied*, 459 U.S. 1117, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983).

As stated in *United States v. Harris*, 761 F.2d at 399 (citations omitted):

> [Appellant] argues that regardless of the government's purpose in offering the prior consistent statements, the motive to fabricate must not have existed at the time the statements were made or they are inadmissible.... It is now settled, however, that this condition need not be met to admit into evidence prior consistent statements which are offered solely to rehabilitate a witness rather than as evidence of the matters asserted in those statements.[5]

4. Similarly, the commentary to A.R.E. 801(d)(1)(B) expresses no such requirement, and indeed, may be read to suggest the requirement is unnecessary:

> Prior consistent statements traditionally have been admissible to rebut charges of recent fabrication or improper influence or motive but not as substantive evidence. *See* Rule 607(b). Under the rule they are substantive evidence. [If] [t]he prior statement is consist-

ent with the testimony given on the stand, and, if the opposite party wishes to open the door for its admission in evidence, no sound reason is apparent why it should not be received generally.

Evidence Rules Commentary at 221.

5. Although the court in *Harris* appeared to view the matter as settled, it is important to note that some federal courts evidently continue to ad-

We find it especially significant that the reasoning of federal cases such as *United States v. Harris* and *United States v. Parodi* has been endorsed by Professor Steven Saltzburg, the drafter of the Alaska Rules of Evidence. Professor Saltzburg, indeed, seems prepared to go even further in interpreting the federal rule. In commenting on the apparent conflict between *United States v. Parodi* and *United States v. Quinto*, 582 F.2d 224 (2d Cir.1978), *aff'd sub nom. Rubin v. United States*, 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981), an earlier federal case—discussed at length in *Parodi*—espousing the requirement that a prior consistent statement precede any motive to testify falsely, Professor Saltzburg has said:

In our judgment, the apparently conflicting authorities could be collapsed into one principle that would be consistent with the goals of the Federal Rules of Evidence and common law precedents. Any statement, even one made after a motive to falsify has arisen, may be used under Rule 801(d)(1)(B) if it tends to disprove a suggestion that a witness is not telling the truth. Such statements are substantive evidence when admitted as long as the witness is present and subject to examination concerning the statements. Naturally, statements made after a motive to falsify has arisen are less likely to be considered probative and more likely to be excluded as they were at common law. But some of these statements are made under circumstances, as in the instant case, for example, in which a court may reasonably conclude that they are valid evidence for the jury to consider.

Since consistent statements are identical to trial testimony, an instruction that they should not be considered for their truth is unlikely to be understood by a jury. A line between substantive and rehabilitative use of these statements is of little use. It would be better to abandon the line and to recognize that nothing in Rule 801(d)(1)(B) forbids admission of statements that are probative for rehabilitation purposes even though they may be made after a motive to falsify arises, but that these statements are not as likely to be admitted as are statements made before a motive to falsify is apparent.

S.A. Saltzburg and K.R. Redden, *Federal Rules of Evidence Manual* at 724 (4th ed. 1986).

■■■ Although we find the reasoning of the recent federal cases to be persuasive and therefore decline to read Alaska Rule of Evidence 801(d)(1)(B) to require automatic exclusion of prior consistent statements made after a motive to testify falsely has arisen, we remain unconvinced of the wisdom of interpreting the rule even more broadly—as recommended by Professor Saltzburg—to permit the use of such statements as substantive evidence, as well as for purposes of rehabilitation.

While Professor Saltzburg is undoubtedly correct in observing that juries will frequently find it difficult to distinguish the permissible use of such evidence from its impermissible use, we do not think this difficulty justifies wholesale abrogation of the distinction. The issue, as we see it, is primarily one of emphasis. Even if jurors are unable to disregard prior consistent statements entirely as substantive evidence of guilt, a proper instruction informing the jury of the specific purpose for which such evidence has been admitted and for which it may be considered will encourage jurors to focus on that purpose and to evaluate the significance of the evidence in light of its intended use.

■■■ Under our interpretation of Rule 801(d)(1)(B), the admission of prior consistent statements made after a motive to falsify has arisen should be treated as a question of relevance, for determination on a

here to the view that prior consistent statements are inadmissible, whether as substantive evidence or for the limited purpose of rehabilitation, unless the statements were made before a

motive to testify falsely arose. *See, e.g., United States v. Rohrer*, 708 F.2d 429, 433 & n. 4 (9th Cir.1983).

case-by-case basis. In each instance where admission is sought, the trial court must begin by determining whether the prior statement is actually relevant "to rebut an express or implied charge ... of recent fabrication or improper influence or motive...." A.R.E. 801(d)(1)(B). Next, if the court finds the statement to be actually relevant, it must proceed to balance the probative value of the statement against its potential for creating unfair prejudice. A.R.E. 402, 403. Finally, if the court determines the statement to be admissible, it must instruct the jury that the statement should be considered for the limited purpose of determining the credibility of the declarant's trial testimony and that it should not be considered directly as proof that the matters asserted in it are true.

### E. Application of Rule 801(d)(1)(B) to the present case

We must now decide what implications our interpretation of Rule 801(d)(1)(B) will have under the circumstances of the present case.

As we have previously explained, the state's theory, both below and on appeal, has been that T.K.'s prior statements are relevant to rebut Nitz' charge that T.K. testified falsely because she disliked him and wanted him removed from the family home. The state maintains that the prior statements show that T.K. has consistently been reluctant to discuss Nitz' offenses, that her early accounts included only partial details of the assaults, and that considerable efforts had to be expended over a lengthy period of time before T.K. was willing to discuss her experiences more fully and openly. Thus, the state views the timing of T.K.'s statements and the circumstances under which they were made to be fundamentally inconsistent with the theory that the child was fabricating a story merely to get rid of Nitz.

To the extent that the evidence of T.K.'s prior statements actually supported this theory, we believe it could properly be deemed relevant to refute Nitz' attack on the credibility of T.K.'s testimony. Even though T.K.'s prior statements were made after her alleged motive to testify falsely existed, the probative force of the evidence, under the state's theory, derived not so much from the fact that T.K. made prior consistent statements as from the specific manner in which she made them. Thus, some, if not most, of the prior consistent statements might have been properly admissible.

■ We are nonetheless compelled to find that the indiscriminate manner in which the evidence of prior consistent statements was admitted, together with its admission as part of the state's case-in-chief, precludes us from making a belated determination of admissibility in the present case. The trial court made no determination of actual relevance as to the prior consistent statements evidence. Nor did the court purport to balance the relevance of this evidence against its potential for prejudicial impact. Furthermore, the jury was never properly instructed of the limited purpose for which the evidence could be considered. Finally, the state was allowed to present all of this evidence as part of its case-in-chief, before T.K. testified and before her trial testimony had actually been impeached.[6]

---

**6.** We recognize that Nitz' objection to the evidence of T.K.'s prior statements was based exclusively on grounds of hearsay. In our view, and in the view of the federal cases that we follow, the challenged evidence, if it was admissible at all, would have been admissible because it was offered for a non-hearsay purpose. To the extent this evidence was relevant for a non-hearsay purpose, it was not subject to exclusion on grounds of hearsay. See A.R.E. 801, 802. Technically, then, the evidence was not objectionable on hearsay grounds, and it might be possible to reject Nitz' claim of error on this narrow basis.

In the circumstances of this case, however, we believe application of such an analysis would be inappropriate. Nitz clearly argued below that the challenged evidence did not comply with the traditional requirements governing admissibility of prior consistent statements under A.R.E. 801(d)(1)(B). Although the state, for its part, made its theory of relevance clear, it did not expressly argue that it sought to admit the evidence as non-hearsay or that its admissibility

The timing of the introduction of this evidence deserves special emphasis. As we have already pointed out, before evidence of a prior consistent statement is admissible under Rule 801(d)(1)(B), the declarant must testify and be subjected to an express or implied charge of recent fabrication or improper influence or motive. Obviously, evidence of prior consistent statements can have no relevance to restore the credibility of a witness when that evidence is admitted before the witness has testified and been impeached. This was precisely the situation in the present case.

█ Because the evidence of T.K.'s prior consistent statements was offered before T.K. testified, it was not properly admissible under Evidence Rule 801(d)(1)(B). *See, e.g., Williams v. State,* 629 P.2d 54, 63 (Alaska 1981); *United States v. Smith,* 746 F.2d 1183, 1185 (6th Cir.1984); *United States v. Strand,* 574 F.2d 993, 996 n. 4 (9th Cir.1978); *United States v. Weil,* 561 F.2d 1109, 1110–11 (4th Cir.1977); *State v. Thompson,* 379 N.W.2d 295, 296–97 (S.D. 1985); *State v. Petrich,* 101 Wash.2d 566, 683 P.2d 173, 179–80 (1984). *See also Davis v. State,* 665 P.2d 1186, 1199 (Okla. Crim.App.), *cert. denied,* 464 U.S. 865, 104 S.Ct. 203, 78 L.Ed.2d 177 (1983).

Some courts have concluded that premature admission of prior consistent statements constituted harmless error where the declarant ultimately testified and was

impeached, because the error amounted to no more than a defect in the order of proof. Findings of harmless error, however, appear to be limited to situations in which impeachment of the declarant was inevitable, the prior consistent statement was relatively insignificant, or the guilt of the accused was established by substantial evidence apart from the declarant's testimony. *See Williams v. State,* 629 P.2d at 63. *See also United States v. Arroyo-Angulo,* 580 F.2d 1137, 1146–47 (2d Cir.), *cert. denied,* 439 U.S. 913, 99 S.Ct. 285, 58 L.Ed.2d 260 (1978); *People v. Ortega,* 672 P.2d 215, 218 (Colo.App.1983); *State v. Herrera,* 236 Or. 1, 386 P.2d 448, 451–52 (1963). In the absence of similar circumstances and where the credibility of the declarant has been a significant issue, courts have shown no ready inclination to find harmless error. *See, e.g., United States v. Pedroza,* 750 F.2d 187, 199–200 (2d Cir.1984); *United States v. Smith,* 746 F.2d 1183, 1185 (6th Cir.1984); *United States v. Ziegler,* 583 F.2d 77, 81–82 & n. 8 (2d Cir.1978); *United States v. Check,* 582 F.2d 668, 680–81 & n. 40 (2d Cir.1978); *United States v. Price,* 722 F.2d 88, 90 (5th Cir.1983). *See also State v. Thompson,* 379 N.W.2d 295, 296–97 (S.D.1985); *State v. Petrich,* 101 Wash.2d 566, 683 P.2d 173, 179–80 (1984).

We have found little helpful discussion of the harmless error issue in the case law. The usual objection, of course, is that prej-

was not governed by A.R.E. 801(d)(1)(B). Nor did the state rely on the evidence only for its non-hearsay purpose once it was admitted. More significantly, however, the trial court did not rely on the distinction between hearsay and non-hearsay in admitting the challenged evidence. Rather, its ruling was based on the broad conclusion that the state should freely be permitted to rely on evidence of prior consistent statements as long as the defense was freely allowed to inquire into prior inconsistent statements. By adopting this broad rationale, the trial court effectively short-circuited the need for any further discussion of the issue by the parties. Having reviewed the record, we conclude that Nitz' hearsay objection was adequate to preserve the issue.

We further recognize that Nitz failed to object to the inadequacy of the trial court's limiting instruction concerning the challenged evidence or to the state's failure to follow through on the

instruction in its opening statement. Certainly, by failing to object, Nitz forfeited his right to argue for reversal of his conviction based on the trial court's error in failing to give an adequate limiting instruction. We do not consider the inadequacy of the instruction for that purpose, however. Rather, we discuss it only to the limited extent that it reflects on the issue of harmless error. Here, in addition to failing to properly limit the purposes for which the jury could consider T.K.'s prior statements, *see* A.R.E. 105, the trial court erred because it admitted the evidence before T.K. testified or was impeached, *see* A.R.E. 613, and without any express determination that the evidence would be relevant to rebut a claim of improper motive, *see* A.R.E. 402, or that its probative value would outweigh its prejudicial impact, *see* A.R.E. 403. The absence of an appropriate limiting instruction is but one factor we consider in deciding whether this error was harmless.

udice occurs through the false impression that repetition adds substance to the victim's story, while it in fact adds nothing. *See* 4 Wigmore § 1124. We perceive at least four additional types of prejudice, however, that can flow from the premature admission of evidence concerning prior consistent statements made by a child sexual assault victim.

First, admitting evidence of prior consistent statements in anticipation of an attack on the testimony of the victim may well foreclose the options open to a defendant in selecting a defense. Except in cases where the defense has made clear, in advance of the prosecution's case-in-chief, that it intends to attack the victim's credibility, it is impossible to say with certainty that a defense attack on the victim's credibility was not precipitated by the premature admission of prior consistent statements evidence. Faced with an array of witnesses called to testify about numerous prior out-of-court statements made by the victim, the accused may be forced to attempt an attack on credibility and may thereby be deprived of the option—which might otherwise be preferable—of foregoing any charge of fabrication or improper motive or influence and of relying, instead, solely on weaknesses inherent in the victim's unbolstered testimony. By bringing the cart in first, the prosecution may in effect leave the accused little practical choice but to drag the horse in behind it. In the present case, our review of the record reveals that Nitz did not commit himself to an attack on T.K.'s motives or to a charge that her testimony was fabricated in advance of the state's case-in-chief. We cannot say with confidence that this line of impeachment was inevitable.[7]

Second, premature admission deprives the trial court of the opportunity to make an accurate, contextual evaluation of the actual relevance of prior consistent statements and precludes a precise balancing of probative value versus prejudicial impact.

It is often difficult, moreover, to predict a witness' testimony with surgical precision. Admission of prior statements in anticipation of the declarant's testimony engenders the risk that the declarant may not be capable of repeating all of the details contained in prior statements that have already been admitted. To the extent that this occurs, the out-of-court statements can become the only evidence presented on a given point. Particularly in cases such as the present one, where extensive evidence of prior consistent statements is adduced, it may be unrealistic to expect counsel, in the midst of trial, to be capable of isolating facts covered only in the witness' prior statements and seeking to have them removed from the jury's consideration.

Third, admission of prior statements in advance of the declarant's testimony, and before any attack on credibility can be made, will inevitably color a jury's perception of the state's case. When such evidence is heard before the declarant testifies and is impeached, its probative value to rebut a defense charge of fabrication will hardly be apparent. The jury's natural tendency will thus be to overlook the legitimate relevance of the evidence and to view it exclusively as substantive proof of the facts asserted. The magnitude of this danger is greatly accentuated where, as in this case, the prior consistent statements were made after a motive to falsify already existed and are therefore admissible not as substantive evidence, but for the sole purpose of rebuttal.

The fourth class of prejudice is closely related: where a parade of witnesses is allowed to offer evidence of prior consistent statements before the victim testifies and is impeached, the jury may be tempted to substitute the credibility of the third-party witnesses for the credibility of the victim. Because the third-party witness will often be viewed as accepting—either im-

---

7. Impeachment has been found inevitable, for example, where the accused had already relied on a defense involving an attack on credibility at a prior trial for the same crime, *Williams v. State,* 629 P.2d at 63, and where the opening statement of the accused was presented before the state's case-in-chief and disclosed an intent to rely on impeachment of the victim's testimony, *United States v. Arroyo-Angulo,* 580 F.2d at 1146–47.

plicitly or explicitly—the facts asserted in the victim's prior statements, allowing them to testify and to present evidence of the prior statements out of order—before the jury is able to discern that the legitimate purpose of the evidence is to counter an attack on the victim's credibility—openly invites the jury to accept the witness' view of the victim's credibility before the victim even testifies. This class of prejudice is particularly great and is particularly susceptible to abuse in cases such as the present one: here, the evidence of guilt consisted almost entirely of the testimony of an unsophisticated and relatively inarticulate child; her prior statements were presented to the jury through a series of articulate adult witnesses, whose ranks included credentialed professionals with extensive experience in dealing with sexual assault cases.[8] It is notable that the prosecution in this case did in fact emphasize this aspect of the prior consistent statements evidence. In final argument, the prosecutor, by urging the jury to consider how unlikely it was that T.K. could have successfully deceived the witnesses who gave testimony about her prior statements, effectively underscored the importance of the opinions held by those witnesses.

In conclusion, while we emphasize that much of the evidence concerning T.K.'s prior consistent statements may properly be admissible on retrial, we are constrained to find that the indiscriminate admission of this evidence, without appropriate restrictions and prior to T.K.'s having been called to the stand as a witness, amounted to error. Because T.K.'s testimony was of critical importance to the case, and because of the extensive nature of the prior consistent statements evidence, the error cannot be dismissed as harmless. Nitz' conviction must be reversed, and his case must be remanded for a retrial.

## III. ADDITIONAL ISSUES

■ Several additional issues raised by Nitz require brief consideration. Nitz argues that the trial court should have dismissed his indictment because the state failed to present exculpatory evidence to the grand jury. The claim is based on the grand jury testimony of Officer Clifton Bennett. Bennett told the grand jury that T.K. had given him a statement concerning Nitz' sexual assault, but he did not reveal the particulars of the statement. In the statement, T.K. initially denied any sexual penetration by Nitz. Shortly after the initial denial, however, when questioned more specifically, T.K. acknowledged that penetration had occurred. She persisted in this accusation in all subsequent interviews and in her testimony before the grand jury. We find that T.K.'s initial denial, when properly viewed in context, amounts at most to a minor inconsistency. The state was under no obligation to disclose this evidence to the grand jury. *See Frink v. State*, 597 P.2d 154, 164–66 (Alaska 1979); *Lipscomb v. State*, 700 P.2d 1298, 1302 (Alaska App.1985).

■ Nitz argues that the trial court erred in failing to grant a protective order categorically precluding admission of evidence indicating that Nitz, during a prior marriage, had sexually assaulted another stepdaughter. The trial court ruled that the evidence would not be admissible if Nitz testified and simply denied T.K.'s accusations. Judge Moody refused, however, to rule out the possibility of admitting the prior crime as evidence if Nitz' testimony raised issues making the evidence specifically relevant.

Nitz offers no authority to support the proposition that he was entitled to *carte blanche* preclusion of the prior crimes evidence in advance of testifying. In moving for a protective order below, Nitz failed to make any specific offer of proof concerning

---

8. There is some helpful discussion of this problem in *United States v. Price*, 722 F.2d 88, 90 (5th Cir.1983). Recognition of the problem is also implicit in cases such as *United States v. Ziegler*, 583 F.2d 77, 81–82 (2d Cir.1978), *State v.*

*Martin*, 135 Ariz. 552, 663 P.2d 236 (1983), *Smith v. State*, 686 P.2d 247 (Nev.1984), and *State v. Harper*, 35 Wash.App. 855, 670 P.2d 296, 298 (1983).

his proposed testimony. Without such an offer, the trial court had no reliable basis for concluding that the challenged evidence would be inadmissible under all conceivable circumstances. We find no abuse of discretion in Judge Moody's disposition of Nitz' motion for a protective order.

Nitz also contends that the trial court erred in denying his motion for a mistrial based on improper final argument by the prosecution. Although our reversal on other grounds makes it unnecessary for us to consider this point, we believe it appropriate to express our concern with the tenor of the prosecution's summation, particularly insofar as it emphasized the prosecutor's personal opinion and the opinions of various witnesses on the issue of T.K.'s credibility. We recently had occasion to discuss the propriety of a similar argument in *Potts v. State*, 712 P.2d 385, 390–95 (Alaska App.1985). We commend our decision in *Potts* to the attention of counsel in this case and urge appropriate circumspection upon retrial.[9]

■ Finally, Nitz maintains that the trial court erred in failing to instruct the jury of the need to render a unanimous verdict as to a single act for each separate count included in the indictment. While the failure to give such an instruction constitutes error, *Covington v. State*, 703 P.2d 436 (Alaska App.1985), *modified on rehearing*, 711 P.2d 1183 (Alaska App.1985), Nitz failed to raise an appropriate objection below. Our reversal on other grounds makes it unnecessary for us to decide whether plain error was committed. *See State v. Covington*, 711 P.2d at 1186–87.[10]

The conviction is REVERSED, and this case is REMANDED for retrial.

---

9. The attorneys appearing on appeal for the state and for Nitz did not participate in the trial.

10. Reversal of the conviction also makes it unnecessary for us to consider Nitz' claim that his sentence is excessive.