**Johnny VANDIVER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–801.**

Court of Appeals cf Alaska.

Oct. 10, 1986.
Rehearing Granted and Amended
Nov. 7, 1986.

Pamela Cravez, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

OPINION

PER CURIAM.

We hold that the superior court erred in allowing certain testimony in this case, as detailed in the opinion of Judge Coats. We therefore order additional briefing before this court on the question of harmless error.

REMANDED.

COATS, Judge, concurring and dissenting.

Appellant Johnny Vandiver was indicted for three counts of sexual assault in the first degree, AS 11.41.410, three counts of sexual abuse of a minor in the first degree, AS 11.41.434(a)(2)(B), and one count of sexual abuse of a minor in the second degree, AS 11.41.436(a)(3)(B). A jury convicted him of all four counts of sexual abuse of a minor. All of the alleged incidents involved Vandiver's purported sexual contacts with his fourteen-year-old stepdaughter between June of 1983 and May of 1984.

In mid-May, 1984, Mrs. Betty Vandiver took her daughter, fourteen-year-old J.C., to see social worker Daniel Ford. Apparently, Mrs. Vandiver was having disciplinary problems with J.C. and the two were always fighting. As is typical in Ford's counseling, he probed J.C.'s relationship with her stepfather, Johnny Vandiver. He asked, again as part of his routine, whether there were any suspicions regarding sexual abuse. Mrs. Vandiver told Ford that she had asked J.C. about sexual abuse and J.C. had replied, "ask him." To Ford, this response was a red flag, and he recommended further counseling.

Several days later, on May 11, 1984, Ford telephoned Mrs. Vandiver and asked her if J.C. had been taken to a counselor. Mrs. Vandiver apparently told Ford that J.C. was not alleging any abuse. Nevertheless, Ford thought it proper to interview J.C. and arranged with Mrs. Vandiver to contact J.C. at her school.

Ford interviewed J.C. on May 25, 1984, at J.C.'s school. J.C. told Ford that Vandiver had been sexually abusing her "since they lived in Alabama." J.C. described where and how Vandiver had touched her sexually and described Vandiver's attempted penetration and ejaculation. Ford then contacted Anchorage Police Officer, Steven Warner.

Later the same day, Ford and J.C. arrived at the Anchorage Police Department so that J.C. could make a statement to Officer Warner. According to Officer Warner, J.C. was able to "discuss the—the matter quite freely." First, J.C. implicated Vandiver as the person who was sexually abusing her. J.C. then stated that the sexual abuse had started three or four years prior to the interview and had continued to the present. J.C. then described the actions of Vandiver including his touching her on her breast, touching her genitals with his hands, digital penetration, attempted sexual intercourse accompanied by "slight penetration," and exchanged oral sex. J.C. also described a tattoo that Vandiver had on his penis.

Vandiver was ultimately indicted and pleaded not guilty to the aforementioned counts. His theory of defense at trial was that J.C. was fabricating the incidents because Vandiver had imposed a curfew and had "grounded" J.C. for two weeks for violating the curfew. Vandiver testified that J.C. had previously fabricated allegations of sexual abuse in order to "get her way." In addition, prior to trial, Mrs. Vandiver told the police that J.C. "gets mad [and] she'll say I'm gonna holler rape on him [Vandiver]. I want him to leave. I don't want him around no more and stuff like that...."

Prior to trial, Vandiver moved to exclude all hearsay statements of J.C. made to Officer Warner and Ford. The state argued that the statements were admissible as a prompt complaint of sexual assault under *Greenway v. State*, 626 P.2d 1060 (Alaska 1980). Superior Court Judge Ralph E. Moody denied Vandiver's motion. Vandiver then asked for clarification of the court's ruling. He argued that if the fact of the complaints to Ford and Officer Warner were admissible, the details of Vandiver's purported conduct towards J.C., as

related by J.C. to Ford and Officer Warner, should be excluded. Judge Moody then ruled that the details were also admissible, stating: "I'm not going to let it go in for the truth of it, but I'm going to let it go in for the purposes of showing ... what they told the police and how this occurred." Apparently, Judge Moody was ruling that the fact of the complaints was admissible under the prompt complaint doctrine recognized by the Alaska Supreme Court in *Greenway*, 626 P.2d 1060. The details of J.C.'s complaint were apparently admitted as relevant to show why and how the police got involved, that is, as background for the case.

The state called both Ford and Officer Warner to testify. Both witnesses testified before J.C. testified. Both men briefly described their jobs and experience in working in the area of child sexual abuse. Ford testified that his responsibilities with the Department of Health and Social Services were to "investigate reports of child abuse ... and to take appropriate action once we determine whether child abuse ... has occurred." Ford testified: "My purpose ... is to establish that there is a problem, there's probable cause that the child is in need of aid...." Both Ford and Officer Warner testified that they had over two years of experience in investigating child sexual abuse cases. In addition, Ford and Warner both related the details of Vandiver's purported sexual contact as described in the interview. They described not only the types of abuse J.C. alleged, but where she had been touched and how she was touched and molested. At numerous points throughout the direct examinations of Ford and Officer Warner, Judge Moody instructed the jury: "This is not evidence. It's merely allowed in to show the circumstances in which they [the authorities] got involved. She [J.C.] will be called and you can evaluate her testimony."

At the close of the state's case-in-chief, J.C. was called to testify. J.C., who was fifteen years old at the time of trial, testified fully and completely, subject to a thorough cross-examination. She described the pattern of abuse giving rise to the charges brought against Vandiver and retold the incidents of abuse described earlier by Ford and Officer Warner.

Vandiver testified in his own defense, flatly denying any incidents of sexual misconduct with J.C. He asserted that the incidents were fabricated by J.C. to strike back at the parental restrictions Vandiver imposed. Vandiver now appeals his conviction.

## A. HEARSAY OBJECTION

First, Vandiver argues that Judge Moody erred in admitting J.C.'s extrajudicial statements made to Officer Warner and social worker Ford. Vandiver takes the position on appeal that, while courts have admitted complaints of sexual abuse and sexual assaults under certain circumstances, none of the limited grounds for admission exist in the present case. He further argues that, even if the fact of the complaints were admissible, the detailed description of Vandiver's misconduct, as related to Ford and Officer Warner by J.C., should have been excluded.

We begin with the recognized grounds for admitting sexual abuse and assault victims' prior complaints, at trial. Courts generally recognize three situations in which such prior statements are admissible: (1) where a prompt complaint rebuts any inferences which could be drawn from the victim's post-incident silence; (2) where a prior consistent statement rebuts an express or implied charge of recent fabrication; and (3) where the statement is part of the *res gestae*, generally analyzed as an excited utterance. *See* 4 J. Wigmore, *Evidence* §§ 1134–39 (Chadbourne Rev. 1972).

Judge Moody's ruling seems in part in part to be predicated on a fourth theory of admission: that J.C.'s statements were allowed not for the truth of the matter asserted but for background to the case; to explain how and why the authorities became involved in the case. That is, Judge Moody ruled that the statements made to Officer Warner and Ford had a relevance

independent of whether the statements were in fact true.[1]

We recently recognized that, in order to qualify as an excited utterance, a statement must be made while under the stress of the event, and must not be the product of reflective thought. *See Sluka v. State,* 717 P.2d 394, 397 (Alaska App.1986). The state concedes that J.C.'s statements to Ford and Officer Warner would not have been properly admitted as excited utterances. In addition, the state concedes that J.C.'s statements to Ford and Officer Warner would not be admissible as rebuttal for recent fabrication because the statements did not precede the motive for fabrication. *See Greenway,* 626 P.2d at 1062 (Matthews, Justice, concurring); *Nitz v. State,* 720 P.2d 55, 64 (Alaska App.1986). We find the state's concessions well-founded. We need now only determine whether J.C.'s statements were admissible, independent of their truth, as prompt complaints of sexual abuse or as background material.

### 1. PROMPT COMPLAINT THEORY OF ADMISSIBILITY

Generally, courts have held that the prompt complaint of a sexual abuse or assault victim is admissible to rebut an implied or express inference that may be drawn from post-incident silence. *See Nitz,* 720 P.2d at 62; 4 J. Wigmore, *supra* § 1735. The supreme court recognized the prompt complaint exception to the hearsay rule in *Greenway,* 626 P.2d 1060, and the state relies heavily on the prompt complaint exception in arguing that J.C.'s statements were admissible.[2] Vandiver argues that prompt complaints are of dubious probative value in sexual abuse cases because consent is not in issue. He further argues that, even if the *fact* of the complaint is admissible, admitting the detailed description of Vandiver's actions by Officer Warner and Ford, as related to them by

J.C., was error under the narrow holding in *Greenway.* 626 P.2d at 1061 n. 4; 4 J. Wigmore, *supra* § 1136 (only the *fact* of the prompt complaint, not the *details* of the incident, are admissible under this theory). *But Cf. Nitz,* 720 P.2d 55 (recognizing relaxation of the rule prohibiting details and concluding that, while details of *complaint* were allowed, absence of details regarding incident precluded a finding of error).

■ First, under the prompt complaint exception, only the first complaint is admissible. *See Nitz,* 720 P.2d at 62. I therefore summarily reject the state's argument as to J.C.'s statement to Officer Warner, which occurred after her statement to Ford.

With regard to J.C.'s statement to Ford, I agree with Vandiver that even the fact of J.C.'s complaint was of dubious probative value in the present case. Wigmore states:

[T]he failure of the woman, at the time of the alleged rape, to make any complaint could be offered in evidence ... as a virtual self-contradiction discrediting her present testimony.

So, where nothing appears [at] ... trial as to the making of such a complaint, the jury might naturally assume that none was made, and counsel for the accused might be entitled to argue that assumption.

. . . .

Thus, the essence of the [admission of prompt complaint] consists in the showing that the woman did not in fact behave with a silence inconsistent with her present story.

4 J. Wigmore, *supra* § 1135 at 298. Thus, the prompt complaint exception is predicated upon the need to rebut inferences which could be drawn from the victim's post-incident silence by introduction of the victim's

---

**1.** Alaska Rule of Evidence 801 provides in part:

(c) *Hearsay.* Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.

**2.** Vandiver argues that because the *Greenway* court purported to refer the prompt complaint exception to the Evidence Rules Committee, which has not as yet adopted the exception, *Greenway* is implicitly overruled. We rejected this argument in *Nitz,* 720 P.2d at 62.

"hue and cry." *See* 4 J. Wigmore, *supra* §§ 1134, 1160.

■ In the present case, it does not appear that the prompt complaint of J.C. was necessary to rebut any inferences drawn from post-incident silence. First, Vandiver's theory of defense was not predicated on inferences to be drawn from J.C.'s post-incident silence. Quite the opposite, Vandiver maintained throughout trial that J.C. had previously complained of abuse to get her way, and was doing so currently. Implicit in his argument is a concession that J.C. made complaints on numerous occasions, although arguably fabricated, not that inferences could be drawn from her silence. Accordingly, I see little probative value in introducing J.C.'s complaint to Ford.[3]

Second, I agree with Vandiver that the prompt complaint is somewhat less probative where, as here, consent is not in issue. While prompt complaints are generally admissible in sexual abuse cases, just as they are in sexual assault cases, I think that in this case the inferences that might possibly be drawn from an absence of "hue and cry" are less strong.[4] Where, as here, consent is not in issue and the defendant's theory of defense implicitly concedes that no inferences may be drawn from post-incident silence, I believe the trial court erred in admitting J.C.'s statement to Ford as a prompt complaint.

## 2. INDEPENDENT PROBATIVE VALUE THEORY OF ADMISSIBILITY

In ruling to admit the fact of J.C.'s complaint and the details of Vandiver's alleged conduct, Judge Moody apparently did so, in part, based upon the probative value of the statements as background for the case.

Judge Moody found the statements relevant, independent of the truth of the matters asserted, in explaining how and why the authorities became involved in the case.

■ I find some appeal in this theory of admissibility in the present case. Vandiver's theory of defense involved impeaching J.C.'s current accusations by her previous, allegedly false, accusations when she purportedly wanted to get her way. Thus, there might have been some probative value in allowing the jury to compare and contrast the recent complaints, to Ford and Officer Warner, with J.C.'s previous complaints. However, Judge Moody's ruling was that the complaints to Ford and Officer Warner merely showed how the case had come to be investigated and eventually prosecuted. Little evidence was presented by which the jury could compare J.C.'s previous complaints with those made to Ford and Officer Warner. Accordingly, I find that admission of J.C.'s statements to Ford and Officer Warner was not particularly probative under the prompt complaint hearsay exception nor as non-hearsay background for the case.

## 3. PREJUDICIAL EFFECT OF THE HEARSAY ADMISSION

The question remains of the extent to which prejudice is attributable to the inclusion of these statements in Vandiver's trial. While J.C. testified fully at trial and was subject to a comprehensive cross-examination, we have recently recognized two types of prejudice which arise where successive third-party witnesses re-tell a sexual abuse victim's story to the jury. The first is that the jury may substitute the third-party witnesses' credibility for the victim's, and accept the victim's story because the third-

---

**3.** Even if I were to find the prompt complaint probative in the present case, the trial court clearly erred in allowing Ford's description of Vandiver's conduct as related by J.C. *See Greenway*, 626 P.2d at 1061 n. 4. While we recognized the trend towards relaxation of the "no details rule" in *Nitz*, 720 P.2d at 63, the details described in the present case were far in excess of those allowed in *Nitz*. In *Nitz*, details

of the complaint were allowed but the complaint itself "was not particularly detailed." *Id.* Here, Ford described where and how J.C. told him she had been touched by Vandiver.

**4.** *See People v. Hernandez*, 88 Ill.App.3d 698, 45 Ill.Dec. 221, 412 N.E.2d 572, 577 (1980); 4 J. Wigmore, *supra*, § 1135(A)(2)(b).

party witnesses accept that story. *Nitz*, 720 P.2d at 70.

In the present case, both Ford and Officer Warner testified that they worked primarily in the area of sexual abuse and assault. Both were presented to the jury as articulate professionals, well-schooled in working with victims in this particular area. Admitting of this evidence created the possibility that the jury might have believed J.C., because Ford and Officer Warner had apparently believed J.C.

The second form of prejudice arises from repetition of the victim's story. As a story is retold to the jury, quite arguably the victim's account takes on a false credibility, predicated not upon substance but upon the sheer force of repetition. *Nitz*, 720 P.2d at 69–70. As the victim's story is repeated, there is a risk that the jury might believe the victim because she told the same story numerous times. The state, as a consequence, has manufactured a weight to its case that might not otherwise exist. I would therefore conclude that the risk of unfair prejudice outweighed the probative value of J.C.'s prior statement.

I am aware of the fact that jurors are not unsophisticated and might well consider the testimony of the state's witnesses solely for the non-hearsay purpose for which it was introduced. My faith in jurors as fact finders, coupled with the full and thorough testimony of J.C., makes the issue of harmless error a close question in the present case. I choose, however, to analyze the issue in light of Vandiver's final argument on appeal.

### B. IMPROPER ADMISSION OF EVIDENCE OF PRIOR CONVICTION

Prior to trial, Vandiver sought and received a protective order excluding his prior conviction. However, during the state's case-in-chief, Mrs. Vandiver was being cross-examined by Vandiver's attorney and the following exchange took place:

Q. Do you own a gun?

. . . .

A. Nope.

Q. Have you ever?

A. Yeah I bought one, but it wasn't for me.

Q. What kind of a gun was that?

A. I don't know, ask John [Appellant Johnny Vandiver]. He's the one that picked it out, I didn't. *He couldn't get one because he had a prison record.* [Emphasis added.]

Vandiver immediately moved for a mistrial. Judge Moody was initially inclined to grant the mistrial motion, but ultimately merely gave a curative instruction.

The propriety of granting or refusing a motion for mistrial is committed to the discretion of the trial court and the decision will be reversed on appeal only if clearly erroneous. *Hines v. State*, 703 P.2d 1175, 1176 (Alaska App.1985); *Dyer v. State*, 666 P.2d 438, 453 (Alaska App.1983).

I believe that the issue of whether Judge Moody should have granted a mistrial in this case is a close issue. I decide this issue considering both the potential harm from improper inclusion of the prior conviction, and from the erroneously admitted prior statements of J.C. The improper inclusion of J.C.'s prior statements, coupled with the inadvertent mention of Vandiver's prior conviction, convinces me that a reversal is in order in this case. The prejudice resulting from repetition of J.C.'s statements and from inclusion of Vandiver's prior conviction at trial does not appear to be harmless and appears to have impinged on Vandiver's right to a fair trial. *See Love v. State*, 457 P.2d 622, 631–32 (Alaska 1969).

I would therefore reverse Vandiver's convictions.[5]

---

5. I find no merit whatsoever in Vandiver's arguments that exculpatory evidence was omitted from the grand jury proceedings. None of the evidence pointed to by Vandiver would be sufficiently material to mandate a dismissal of the indictment. *See Frink v. State*, 597 P.2d 154, 164–66 (Alaska 1979). Evidence is sufficient to sustain an indictment if the evidence, when unexplained or uncontradicted, would warrant a conviction. *State v. Parks*, 437 P.2d 642, 644

SINGLETON, Judge, with whom BRYNER, Chief Judge, joins, concurring.

■ We agree with Judge Coats' resolution of all issues in this case, except for his treatment of the question of harmless error. We also agree with him that each of the errors found in this case presents a close harmless error question when viewed in isolation. *See e.g., Nitz v. State,* 720 P.2d 55 (Alaska App.1986) (discussing harmfulness of improper admission of a complaining witness' prior consistent statements) and *Hines v. State,* 703 P.2d 1175, 1178–79 (Alaska App. 1985) (discussing harmfulness of inadvertent reference to the defendant's prior criminal record).

■ Finally, we agree that the cumulative effect of these errors might require reversal. *See Pletnikoff v. State,* 719 P.2d 1039, 1045 (Alaska App.1986). Nevertheless, the *Nitz* and *Pletnikoff* cases were decided after completion of briefing in this case, so the parties have never really addressed the question of harmless error in any detail. We therefore request additional briefing on the question of whether the cumulative effect of the errors we have found entitles Vandiver to a new trial.[1]

(Alaska 1968). The prosecutor need not develop the defendant's case nor present every lead favorable to the accused. *Dyer v. State,* 666 P.2d 438, 444 (Alaska App.1983); *Tookak v. State,* 648 P.2d 1018, 1021 (Alaska App.1982). I find no error under the present facts.

Vandiver, in connection with his argument that the trial court erroneously allowed Ford and Officer Warner to describe J.C.'s statements, also argues that Mrs. Vandiver's accounts of J.C.'s complaints should not have been allowed. The state argues that Mrs. Vandiver's accounts were admissible under all three theories, that is, as prompt complaints, to rebut recent fabrication, and as excited utterances. In light of my resolution of the issues in this case, I find it unnecessary to resolve the question. In the event of a new trial, the admissibility of Mrs. Vandiver's accounts of J.C.'s complaints should be reevaluated consistently with this opinion.

1. In addition to the arguments addressed in Judge Coats' opinion, Vandiver has asserted that the trial court erred in admitting evidence of hearsay statements made by J.C. to her mother. It is unnecessary for us to consider this argument in detail, since, even assuming admission of this evidence was error, we believe that the error was clearly harmless and that any resulting prejudice was so slight that it would have no appreciable effect on resolution of the cumulative error issue.