Thomas NUSUNGINYA, Appellant,

v.

STATE of Alaska, Appellee.

No. A–1265.

Court of Appeals of Alaska.

Dec. 19, 1986.

J. John Franich, Asst. Public Advocate, Fairbanks, and Brant McGee, Public Advocate, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

BRYNER, Chief Judge.

Thomas Nusunginya was convicted by a jury of sexual abuse of a minor in the first degree. AS 11.41.434(a)(2)(B). On appeal, Nusunginya contends that the superior court abused its discretion in allowing two witnesses to testify about the victim's statements to them. We affirm.

The conviction stems from an allegation by Nusunginya's daughter, C.N., that she was raped by her father on Thursday night, January 17, 1985. After the incident, C.N. stopped attending school. Over the weekend she told her ten-year-old cousin, Donna Long, about the rape. Two days later she reported the rape to her aunt Patsy Aamodt.

At trial C.N. was the state's first witness. She was impeached on cross-examination as Nusunginya attempted to show that she was lying about the rape. The state subsequently called Patsy Aamodt and Donna Long, who testified about the statements C.N. made to them after the sexual assault. Long testified that C.N. told her Nusunginya came into her bed while she was undressed and did something wrong. Aamodt testified that C.N. told her, "My dad raped me." Nusunginya objected to the testimony of both witnesses on the ground of hearsay. He renews this argument on appeal.

We find, initially, that C.N.'s statement to Long was admissible under the first-complaint hearsay exception. *See Greenway v. State,* 626 P.2d 1060 (Alaska 1980); *Nitz v. State,* 720 P.2d 55 (Alaska App.1986). C.N. made her statement to Long within several days of the alleged assault. Although Long was permitted to go beyond the fact that the complaint was made and was allowed to describe some of the details of C.N.'s statement, the prior statement itself was brief, and Long's memory of it had faded. Consequently, Long's testimony did not provide any significant detail, apart from establishing that C.N. had identified Nusunginya as her assailant.

It is, of course, true that second-party testimony in sexual assault cases revealing details of a victim's first complaint, including the identity of the assailant, has traditionally been viewed as inadmissible. 4 J. Wigmore, *Evidence* § 1136 at 306–07 (Chadbourn Rev. ed. 1972). However, in *Nitz v. State,* 720 P.2d at 63, we questioned the utility of attempting to conceal the identity of the person accused in the victim's first complaint where the victim is a

child who accuses a parent of sexual assault. The issue in such cases is seldom the identity of the assailant, but whether an assault occurred. This was certainly the case at Nusunginya's trial, where the only issue actively contested was whether the alleged rape had occurred at all.

In *Nitz*, we further explained that more recent decisions have recognized the appropriateness, within reasonable limits of the trial court's discretion, of allowing details of a first complaint to be admitted for purposes of enabling the jury to obtain a fair understanding of the context in which the complaint was made. *Id.* In the present case, there were no witnesses to the assault and very little evidence for the jury to consider. Long's testimony helped provide a context in which the complaint could be viewed. Additionally, Long's testimony did not go beyond the testimony of C.N., who had already testified when Long was called. Thus, applying the first complaint exception, we conclude that the trial court did not err in allowing Long to testify.[1]

■ Even assuming Long's testimony was inadmissible under the first-complaint exception, it was clearly admissible under A.R.E. 801(d)(1)(B) as a prior consistent statement. Likewise, Patsy Aamodt's testimony was admissible under the same theory. Our decision in *Nitz* is controlling on this issue.

■ In *Nitz*, we set out four criteria governing the admissibility of prior consistent statements in cases where, as here, the victim's prior statement was made after a motive to fabricate had already arisen: first, the victim must testify, and her testimony must actually be impeached by an express or implied claim of recent fabrication or improper motive. Second, the court must determine that the prior consistent statement is actually relevant on the issue of credibility. Third, if the statement is relevant, its probative value must be found to outweigh its potential for unfair prejudice. Finally, the jury must be instructed that the statement is admissible only for the limited purpose of determining the credibility of the victim's trial testimony. *Id.* at 68.

The first three *Nitz* criteria are easily satisfied in the present case. C.N. testified before her prior consistent statements were admitted; on cross-examination, her testimony was impeached by an implied claim of fabrication. C.N.'s prior statements were potentially highly probative of her credibility as a witness, since they provided a full factual context within which the jury could judge the truthfulness of her trial testimony. Moreover, the potential for prejudicial impact of the statements was slight. Only two witnesses were called. The prior consistent statements they described were no more detailed or coherent than C.N.'s own testimony. Neither witness claimed any particular insight or expertise concerning the subject matter at issue, and there is no reason to suspect that either witness would have been viewed by the jury as being inherently more credible than C.N.

■ Only the fourth *Nitz* criterion has not been met here: the trial court did not instruct the jury that C.N.'s prior consistent statements could be considered only for the limited purpose of evaluating her credibility as a witness. Yet the failure to comply with this requirement is clearly harmless under the circumstances of this case.

Nusunginya's case was tried prior to our decision in *Nitz*, and the trial court's ruling

---

**1.** *But see Vandiver v. State,* 726 P.2d 195 (Alaska App.1986), where we found the details of a child-victim's first complaint of sexual assault to be inadmissible, observing that such evidence generally has diminished probative value in sexual assault cases where consent is not in issue. The circumstances of Nusunginya's case, however, are readily distinguishable from those involved in *Vandiver.* In *Vandiver,* the details of the first complaint described at trial exceeded those allowed in *Nitz;* here, no particular detail was related other than the identity of C.N.'s assailant. Moreover, unlike the present case, in *Vandiver,* the accused relied on a defense that was implicitly inconsistent with the rationale that supports admission of first-complaint evidence. *See Vandiver,* 726 P.2d at 199.

was therefore made before the applicable criteria were formulated. Although he objected to Long's and Aamodt's testimony on hearsay grounds, Nusunginya never requested a limiting instruction after his objections were overruled. Moreover, the very same considerations that led us to conclude that the evidence of C.N.'s prior consistent statements was more probative than prejudicial also convince us that the failure to give a limiting instruction did not result in any appreciable prejudice. In *Nitz*, a series of witnesses—experts, police officers and relatives—were permitted by the trial court to testify concerning prior consistent statements of a very young and inarticulate victim. The victim had not yet testified or been impeached. We reversed the conviction. Our fear was that, under those circumstances, the jury might well be apt to lose sight of the need to base its verdict on the credibility of the victim's testimony:

> [I]t can be fundamentally unfair to allow the bulk of the child's testimony to be presented through a parade of articulate, experienced, adult witnesses who impart to the child's statements the mature eloquence of adulthood and a sense of their own credibility, while adding nothing of substance but the force of repetition.

*Nitz v. State*, 720 P.2d at 61. The circumstances of the present case are a far cry from those of *Nitz* and do not give rise to the same concerns that led to reversal in that case. Accordingly, we conclude that any error in admitting the testimony of witnesses Long and Aamodt without a limiting instruction was harmless.

The conviction is AFFIRMED.