James E. KOSBRUK, Appellant,

v.

STATE of Alaska, Appellee.

No. A–2971.

Court of Appeals of Alaska.

Nov. 8, 1991.

Rex Lamont Butler, Anchorage, for appellant.

Shelley K. Chaffin, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Douglas B. Baily, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS, J., and ANDREWS, Superior Court Judge.*

OPINION

ANDREWS, Superior Court Judge.

James E. Kosbruk was convicted of two counts of second-degree sexual abuse of a minor in violation of AS 11.41.436(a)(2).

___

* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

Kosbruk was sentenced to six years with one year suspended on each count. The sentences were ordered concurrent. Kosbruk also received a five year term of probation. Kosbruk appeals his conviction claiming the court erred on several evidentiary matters. He appeals his sentence claiming the court improperly rejected a mitigating factor. We affirm.

Kosbruk was visiting the home of Mr. and Mrs. S., when Mr. and Mrs. S. decided to go to the video store. They brought one of their four children with them. The other three children remained at home with Kosbruk.

While they were gone, Kosbruk asked L.S., their nine-year-old daughter, to sit on his lap. L.S. sat on one of Kosbruk's knees, and Kosbruk put his hand under her shirt and on her chest. He then put one hand down her pants and rubbed around her "privates." L.S. attempted to get off of Kosbruk's lap, but he held onto the back of her shirt. L.S. got away after Kosbruk let go of her.

Mr. and Mrs. S. returned home within twenty to thirty minutes from the time they had left the house. They found L.S. alone in her dark bedroom. Mrs. S. testified that it was unusual for L.S. to sit in dark rooms. Mr. S. claimed that usually L.S. would come out and greet him when he entered the house. L.S. appeared upset and ready to cry. Mrs. S. asked L.S. "what was the matter?" According to Mrs. S., L.S. told her that Kosbruk "had put his hands on her body—on her chest." Mrs. S. also testified that she thought L.S. said that Kosbruk "put his whole hands in her pants." Mr. S. overheard L.S. tell her mother about the abuse.

Mr. S. asked Kosbruk, "What did you do to my little girl?" Kosbruk did not reply and Mr. S. told L.S. to tell Kosbruk what she had told him. L.S. asked Kosbruk, "Why did you do these things to me?" Kosbruk replied that he had not done anything to L.S. L.S. told Kosbruk that he had touched her. Angered, Mr. S. began hitting Kosbruk. Mr. S. grabbed a knife and Mrs. S. intervened, allowing Kosbruk to escape.

Mrs. S. drove to a nearby store to call the police, since they did not have a phone. Officer Linda Branchflower was in the store's lot investigating another incident when Mrs. S. approached her. She told Officer Branchflower that her "husband just got into a fight and that the guy had bothered [her] daughter." Officer Branchflower went to the S.'s house and interviewed L.S., who told her that Kosbruk had touched her underneath her clothes, indicating her chest area, and where she goes to the bathroom. Officer Branchflower, believing that Kosbruk had digitally penetrated L.S.'s vagina, brought L.S. to Anchorage Native Services Hospital for an examination. She then brought L.S. to the Anchorage Police Department where Richard Mills, an investigator with the child sexual abuse unit, interviewed L.S. The investigation resulted in Kosbruk being charged with two counts of second degree sexual abuse of a minor. He was tried by a jury and convicted. During the course of the trial, Mrs. S. was allowed to testify about L.S.'s statement of abuse. The state was allowed to impeach the victim with a prior inconsistent statement. Officer Mills was allowed to testify about his experience in interviewing children and the likelihood of finding medically corroborating evidence. Kosbruk attacks these rulings. We address them.

### Mrs. S.'s Testimony

Kosbruk objected to the following testimony at trial:

PROSECUTOR: Now what exactly did she tell you?

MRS. S.: I believe . . .

DEFENSE COUNSEL: Objection. Hearsay.

THE COURT: I think it's first complaint.

PROSECUTOR: Would be admissible under *Greenway*, Your Honor.

THE COURT: Overruled.

PROSECUTOR: What did she tell you?

MRS. S.: I believe she told me that he— she said he had put his hands on her body. On her chest. And I think she said he put his whole hands in her pants.

Kosbruk argues that this testimony elicited details regarding the victim's complaint of sexual abuse. He contends that *Greenway v. State,* 626 P.2d 1060, 1061 n. 4 (Alaska 1980), "precludes the introduction of testimony as to the 'details' of L.S.'s first complaint."

In *Nitz v. State,* 720 P.2d 55 (Alaska App.1986) and *Nusunginya v. State,* 730 P.2d 172 (Alaska App.1986), this court decided whether a witness' testimony regarding a complaint was too detailed to fall within the "first-complaint" hearsay exception. The court commented that

> [t]here has been a marked trend toward relaxation of the traditional restrictions governing admission of evidence of the victim's first complaint. More recent decisions have recognized the appropriateness, within the reasonable limits of the trial court's discretion, of allowing details of a first complaint of sexual assault to be admitted for the purpose of enabling the jury to obtain a fair understanding of the circumstances under which the complaint was made. *Nitz,* 720 P.2d at 63 (citation omitted). In *Nitz,* the complaint was admissible, since it was not particularly detailed and the defendant's identity was not in issue. *Id.* At issue in *Nitz,* as it is in the present case, was whether the assault occurred, not whether the defendant was the perpetrator. *Id.*

In *Nusunginya,* the witnesses' testimony, which repeated the victim's complaint, "did not provide any significant detail, apart from establishing that the victim had identified Nusunginya as her assailant." 730 P.2d at 173.

In the current case, this first complaint is no more detailed than the complaint in *Nusunginya. Id.* Like the testimony in *Nusunginya,* Mrs. S.'s statement was brief and did not provide any significant detail; whereas, L.S.'s statements concerning the abuse were considerably more detailed. In addition, the significance of Mrs. S.'s statements is lessened since Kosbruk's identity was never in issue. *Nitz,* 720 P.2d at 63. The trial court did not abuse its discretion by overruling Kosbruk's objection to Mrs.

S.'s statement and admitting the statement under the first-complaint exception to the hearsay rule.

### *Impeachment of L.S.*

At trial, L.S. testified that Kosbruk rubbed "around," but did not touch her "privates." Officer Linda Branchflower was asked to testify regarding L.S.'s prior inconsistent statement that Kosbruk "touched her where she goes to the bathroom." Kosbruk objected on hearsay grounds and directed the court to Alaska Evidence Rules 801(d)(1)(A) and 613. The court overruled the objection. On appeal, Kosbruk argues that the court should not have overruled the objection because the state failed to lay a proper foundation since L.S. was not given an opportunity to explain or deny the statement.

Both parties concede that L.S. testified that Kosbruk did not touch the area from which she goes "pee."

> Q: When—when Mr. Kosbruk touched you in your pants
>
> .    .    .    .    .
>
> A: Yes.
> Q: ... did he put his hands around your privates or did he touch on the spot where you go pee?
> A: He was rubbing around it.
> Q: He was rubbing around it[?]
> A: Yes.
> Q: Okay. Did he touch on it? Do you remember?
> A: No.
> Q: You don't remember.
> A: Yes.

L.S., however, also testified that she had told Officer Branchflower that Kosbruk touched her where she goes to the bathroom.

> Q: [D]id he ever put his fingers inside you where you where you go bathroom?
> A: No.
> Q: No? Okay. (Pause.) [L.S.], do you remember talking to Officer Branchflower, a lady police officer?
> A: Um-hum. Yes.
> Q: Did you talk with her that night?

A: Yes.

Q: Did she ask you about what happened?

A: Yes.

Q: And did you tell Officer Branchflower that Mr. Kosbruk was touching you where you go bathroom?

A: Yes.

The trial court has considerable latitude to decide when a sufficient foundation has been laid for the admission of a prior inconsistent statement. *Bodine v. State,* 737 P.2d 1072, 1074 (Alaska App.1987). This is particularly true when the witness who made the inconsistent statement is a child. *Id.*

Alaska Evidence Rule 613(b) states, in pertinent part:

[B]efore extrinsic evidence of a prior contradictory statement or of bias or interest may be admitted, the examiner shall lay a foundation for impeachment by affording the witness the opportunity, while testifying, to explain or deny any prior statement, or to admit, deny or explain any bias or interest, except as provided in subdivision (b)(1) of this rule.

(1) The court shall permit witnesses to be recalled for the purpose of laying a foundation for impeachment if satisfied that failure to lay a foundation was for good cause; even if no foundation is laid, an inconsistent statement may be admitted in the interests of justice.

In *Bodine,* we determined that the nature of the questioning of the victim provided her with sufficient opportunity to explain or deny two prior inconsistent statements. 737 P.2d at 1075. This was true even though the prosecutor never asked the victim specifically about two prior or inconsistent statements she had made to a social worker and a police officer. *Id.* We concluded that "[a]lthough the prosecutor could certainly have been more specific in disclosing to [the victim] the date of her prior statements, the persons to whom they were made, and their precise contents, the questions actually asked were, in context, adequate to alert [the victim] to her prior interviews" with a social worker and a police officer. *Id.*

L.S., unlike the victim in *Bodine,* was asked about the very statement she had made to Officer Branchflower: L.S. was asked whether she had told Office Branchflower that Kosbruk had touched her where she goes to the bathroom. Consequently, L.S. was given a chance to explain or deny her earlier statement to Officer Branchflower and a proper foundation was laid for admission of L.S.'s prior inconsistent statement. The trial court properly overruled Kosbruk's objection to the introduction of the prior inconsistent statement.

### Officer Mills' Testimony

Anchorage Police Department Investigator Richard M. Mills interviewed L.S. At trial, the prosecutor asked Investigator Mills, "[I]n [your] experience with interviewing children, are they—at the age of nine, are they sometimes a little difficult to understand?" Kosbruk objected on relevance grounds. The prosecutor also asked Mills whether he would be surprised to see a sexual assault case in which there was no medical evidence. Kosbruk again objected, claiming that the question called for an answer outside the scope of Kosbruk's profession. The prosecution laid a foundation for Mills' testimony and the court ultimately overruled both objections.[1]

---

1. The pertinent testimony of Investigator Mills follows:

PROSECUTOR: In your experience with interviewing children, are they—at the age of nine, are they sometimes a little difficult to understand?

MILLS: Yes, they are.

DEFENSE: Objection as to relevance. In reference to—

THE COURT: I don't—I don't follow your objection. I don't know exactly where Mr. McLaughlin is going, but I think it's permissible. Go ahead.

PROSECUTOR: Investigator Mills, would it surprise you, sir, if you were dealing—in your experience dealing with a case of sexual contact, that there would be no medical evidence of touching of the breast or the vagina?

MILLS: I would not be ...

DEFENSE: Objection to that kind of a conclusion.

THE COURT: I don't understand the basis of your objection.

DEFENSE: Well, I think it calls for speculation on the part of this witness. I mean if a

On appeal, Kosbruk argues that Mills was not qualified as an expert "in the field of investigation of child abuse cases," and, consequently, his testimony was irrelevant. Kosbruk also argues that the state should have notified the defense that Mills would be testifying as an expert so that the defense could have had an opportunity to obtain contrary expert opinions.[2] The state argues that Kosbruk failed to preserve this argument for appeal because his objection at trial was based on relevancy considerations rather than the argument that Mills was not qualified as an expert. In addition, the state contends that expert testimony was not required in this case and that Officer Mills was properly permitted to testify about his experience as an officer in a specialized unit.

Alaska Rule of Evidence 702(a) provides: [I]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

The question to ask when deciding whether to admit expert testimony is whether that testimony will assist the jury in reaching a just verdict. *Rodriguez v. State,* 741 P.2d 1200, 1203 (Alaska App.1987). "Many times the jury can be aided by background information which might tend to explain certain behavior." *Id.*

Mills worked as an investigator in the child sexual assault unit for nearly four years and had received approximately 120 hours of specialized training in the areas of sexual assault, child sexual abuse, and child exploitation. He had investigated over 400 cases, during which he had interviewed over 1100 children. Approximately sixty to seventy percent of the cases he investigated involved children who had been medically examined. Mills' experience gave him information not within the ken of an ordinary juror. His experience could assist the jury in determining why L.S. gave a statement to the jury which was inconsistent with the one she gave Officer Branchflower. In addition, unlike the average person, Mills had experience which taught him that it would not be unusual for a sexual abuse complaint to be uncorroborated by medical evidence.

Kosbruk never claimed that Mills was not qualified as an expert child abuse inves-

person had touched. It depends on how hard the touch. Whether they're going to leave bruises and things like that. I mean it's just—it's—it's a question that has such a broad spectrum of answers I don't—I think its outside the scope of this witness' professional knowledge. I think that question is better put to a doctor. What kind of touching would leave marks and ...
THE COURT: Well, you can lay a greater foundation if you like.
PROSECUTOR: Okay.
PROSECUTOR: Investigator Mills, in your experience—you've dealt with 400 cases you've testified. Of child sexual abuse.
MILLS: Yes, sir.
PROSECUTOR: In your experience, sir, if someone had touched someone on the surface, on their genitals with their hand, not hard, would it surprise you that there would be no medical evidence of that—no medical *evidence of penetration or bruising or anything like that?*
DEFENSE: Your Honor, I object.
THE COURT: I think—I mean the—the foundation needs to go more *towards how much experience he's had with medical exams in this kind of case.*

PROSECUTOR: Do you know, Investigator Mills, how many cases you have dealt with where there have been medical exams?
MILLS: Not precisely. I can ...
PROSECUTOR: Can you give us a percentage of the ones you've dealt with?
MILLS: I would say something between 60 and 70 percent of the cases that I've been involved with have involved medical examinations of which *I receive written reports of those medical examinations and review those.*
PROSECUTOR: Would it surprise you then, sir, if—that there would be no medical evidence of contact? If that contact was not—was not something brutal or involved hitting or striking or force?
MILLS: No, it would not surprise me at all.

**2.** Kosbruk's claim that he was not notified that Mills would be testifying as an expert is unavailing. Kosbruk never raised this claim at trial when a continuance would have allowed the defense to obtain expert witnesses. *See Longley v. State,* 776 P.2d 339, 343 (Alaska App.1989) (the proper remedy for nondisclosure of discoverable materials is a continuance unless the defendant has shown strong prejudice).

tigator. He merely objected to his testimony by claiming it was irrelevant and beyond the scope of his professional knowledge. Given Mills' qualifications and Kosbruk's failure to make a specific objection, the court did not abuse its discretion by admitting Mills' testimony. *See Williams v. State,* 629 P.2d 54, 62 (Alaska 1981) (an incomprehensible objection fails to preserve a point for appeal).

### Sentence

■ In the current case, Kosbruk was convicted of two counts of second-degree sexual abuse of a minor, class B felonies. Kosbruk, a second-felony offender, was subject to a presumptive sentence of four years on each count. AS 12.55.125(d)(1).[3] Judge Katz found that Kosbruk's offense was aggravated by two factors: (1) the particular vulnerability of the victim; and (2) Kosbruk's status as a parolee at the time of the current offense. AS 12.55.-155(c)(5) and (20).[4] Judge Katz sentenced Kosbruk to six years with one year suspended on each count and ordered the sentences to run concurrently.

Kosbruk claims that the court improperly rejected one of his proposed mitigators at sentencing. He claims that his conduct was among the least serious contained within the definition of the offense, AS 12.55.155(d)(9), but that the court rejected this mitigator by relying on improper considerations, such as the effect of the offense on the household and the fact that the victim had been sexually assaulted before this incident by another individual. Kosbruk argues that the court should only have considered his behavior when considering the proposed mitigator. At sentencing, Kosbruk argued that the offense was mitigated because Kosbruk was drunk and he only touched L.S. once on the chest and once on the vagina.

Judge Katz gave a number of reasons supporting her rejection of the mitigator.

> [T]here were a couple of things about it that make me disinclined to find that the mitigator has been established by clear and convincing evidence. First of all there is the aspect of some force. Not a great deal, but some force was used. The child did resist, the testimony was, and she was not initially able to get away. So it isn't a question as apparently was true in either *S.B.* or the *Benboe* case that *S.B.* in turn relied on. That as soon as there was a protest, the perpetrator allowed the victim to get away. So, that is a factor I've considered. I also recall two things from the trial. One was I believe her mother—[L.S.'s] mother testified that this was not the first incident for this child, and that's why they were particularly alerted and concerned about it. Not with—not with Mr. Kosbruk. Not at all. But in terms of the harm occasioned that that was why there was such a sense of alarm. That combined with the fact that there was this incredibly emotional scene when the father got involved and started attacking Mr. Kosbruk—and I've considered whether it's appropriate to look at that since that wasn't directly Mr. Kosbruk's conduct, but if we're looking at what this child was going through, she—she tells her parents that this has happened to her, and, you know, there's this incredibly violent disruption in her household as a result. I think we have to say that the initial cause of all that was what Mr. Kosbruk did to her. With obviously some intervening action on the part of the father.... I should note, in terms of a record, that even had I found the mitigator, I think that on balance with the aggravators I found I would not have modified the sentence I'm going to impose.

Judge Katz did not abuse her discretion in rejecting the proposed mitigator. The fact that the sexual abuse occurred only once does not serve to mitigate the offense. *State v. Woods,* 680 P.2d 1195, 1198 (Alaska App.1984). The use of force by Kosbruk was enough to refute the mitigator. Additionally, the fact that Kosbruk elected

---

**3.** The presumptive term for a third-felony offender is six years. AS 12.55.125(d)(2).

**4.** Kosbruk has not challenged the court's finding of the aggravators.

to molest a victim who was only nine years old aggravated his conduct. In short, Kosbruk failed to meet his burden of establishing the existence of the mitigator. Judge Katz' reliance on the effects of the abuse, which were outside of Kosbruk's control, is therefore inconsequential. Judge Katz' rejection of the least-serious-offense mitigator is not clearly erroneous.

Judge Katz did not abuse her discretion by overruling Kosbruk's evidentiary objections. The trial court's judgment and sentence should be AFFIRMED.

MANNHEIMER, J., not participating.